### CITY OF LITTLE ROCK v. WILLIS.

CORPORATIONS—*Actions against for torts.*—A right of action against municipal corporations does not exist at common law, and their liability to a private action, for *torts*, must be determined by the statute which creates them.

SAME—The sections of the general incorporation act, conferring upon cities the "power to lay off, open, widen, straighten and establish, keep in order and repair all streets, alleys and public grounds, etc., and to open and construct and keep in repair *sewers* and drains," are not mandatory, and for the exercise of a lawful power, which, by law, is vested in the *judgment* and *discretion* of a municipal corporation or public body, for the good of the whole, no injury for which an action will lie can be committed; but for the *imperfect, negligent, unskillful execution* of a thing *ordained* to be done, an action will lie, in the absence of an express statute.

APPEAL FROM PULASKI CIRCUIT COURT.

Hon. JOHN WHYTOCK, *Circuit Judge.*

*Fay Hempstead*, for Appellant.

The *construction* of a public work by a corporation is necessary before a recovery can be had for damages resulting from it. 1 *Black.* 39; *Conrad vs. Ithaca*, 158; *Mayer vs. Furze*, 3 *Hill*, 612; *Montgomery vs. Gilmer*, 33 *Ala.*, 116; *Shearman & Redfield on Negligence*, p. 631, sec. 579; *Rochester White Lead Co. vs. Rochester*, 3 *Comstock*, 463. The fact of occasionally making repairs on a public work will not make a city liable for damages resulting therefrom, as a voluntary assumption of the duty of maintaining it. *Munn vs. Pittsburg*, 40 *Penn.*, 364.

Wherever it is left to the discretion of a corporation, whether a particular act shall be done or not, no liability attaches for a failure to use this discretion. *Cole vs. Medina*, 27, *Barb.*, 218; *Commissioners vs. Duckett*, 20 *Maryland*; *Curr vs. Northern Liberties*, 35, *Penn. St.*, 324; *Peck vs. Batavia*, 32 *Barb.*, 634; *Mayor vs. Cunliff*, 2 *N. Y.*

That a city is not liable for damages which are the result of the establishment of street grades. *See note* 1 *to p.* 147 *of*

*S. & R. on Negligence,* and the following cases there cited : *Kavanaugh vs. Brooklyn,* 38 *Barb.,* 232 ; *Matter of Furman street,* 17 *Wendell,* 667 ; *O'Conner vs. Pittsburg,* 18 *Penn. St.,* 187 ; *Taylor vs. City of St. Louis,* 14 *Mo.,* 20 ; *Round vs. Munford,* 2 *R. I.,* 154 ; *Lebanon vs. Alcott.* 1 *N. H.,* 339 ; *Bennett vs. New Orleans,* 14 *La. An.,* 120 ; *State vs. Graves,* 19 *Md.,* 351 ; *Cole vs. Muscatine,* 14 *Iowa,* 326 ; *Callander vs. Marsh,* 1 *Pick.,* 418.

*Farr & Fletcher* and *T. D. W. Yonley,* for Appellee.

The rule of law applicable to this case is thus laid down in the case of *Rochester White Lead Company vs. City of Rochester,* 3 *Comst.,* (3 *N. Y.*) : "Where a municipal corporation has power by its charter to cause common sewers, drains, etc., to be made in any part of the city, although passing an ordinance for the construction of such a work is a judicial act for which they are not liable, yet the doing of the work in carrying it out is ministerial, and it is their duty to see that it is skillfully and carefully done. If by the want of care or skill in its agents, a culvert be constructed of insufficient capacity to carry off the water in a freshet, the city will be liable to individuals for damages thereby occasioned." See, also *Lloyd vs. Mayor of City of N. Y.,* 5 *N. Y.,* 369 ; *Delmonico vs. same,* 1 *Sand.,* 222 ; *West vs. Trustees, of Rockport,* 16 *N. Y.,* 161 ; *Morey vs. Town of Newfane,* 8 *Barb.,* 645 ; *Baston vs. City of Syracuse,* 37 *Barb.,* 292, 3 *Hill,* 612 ; *Barrow vs. Mayor and City of Baltimore,* A. M. *Jur.,* 203 ; *Rhoade vs. City of Cleveland,* 10 *Ohio,* 459. See, also, 16 *Ohio,* 475, *and* 7 *Ohio State,* 407.

It is a well settled rule of law in this State, that the court will not look to the testimony for the purpose of disturbing the verdict of the jury, unless the verdict is so clearly against the testimony as to shock our sense of justice and right upon the first blush. *Lenox vs. Pike,* 2 *Ark.,* 14 ; *Howell vs. Webb,* 2 *Ark.,* 360 ; *Sanderer vs. Wilson,* 5 *Ark.,* 407 ; *Hazen vs. Henry,* 6 *Ark.,* 86 ; *Drennon vs. Brown,* 10 *Ark.,* 139.

McCLURE, C. J.—It appears from the record, in this case,

that Willis was living in a house near a drain, at the corner
of Third and Louisiana streets, in the city of Little Rock,
which said drain is usually known as the "town branch."
After an unusually copious rain, the drain alluded to, so the
appellee alleges, overflowed its banks, and damaged him in
the sum of one thousand dollars. At the hearing, in the
Circuit Court below, the appellee obtained judgment in the
sum of two hundred and fifty dollars. Motion for a new
trial was made and overruled, and the cause is brought to
this court by appeal.

On the trial of this cause, exception was taken to the ru-
ling of the court, in refusing to give the second and eighth
instruction offered by the appellant, and to the second and
third instruction given by the court at the instance of the
appellee.

The instruction which the court refused to give, at the in-
stance of the appellant, is as follows:

"*Second.* Where a city constructs a sewer, which is not in
itself a *nuisance,* but insufficient to carry off the water, the
city is not responsible for damages occasioned by overflowing."

There is no error in refusing to give this instruction. The
liability of cities and towns, under our statutes, is not meas-
ured by an answer to whether or not the thing complained of
is a *nuisance.*

The instruction numbered eight, which the court refused
to give, at the instance of the appellant, is as follows: "If
the jury find, from the evidence, that the house occupied by
plaintiff was ten or twelve inches below the grade of the
street in front thereof, which crosses the 'town branch,'
and that by reason of the house being below the grade, the
plaintiff suffered the injury complained of, or if that fact
largely contributed thereto, then the plaintiff cannot recover."

As the second instruction, asked by the appellee, was objec-
ted to by the appellant, and as it is in conflict with the one
asked by the appellant, it will be here stated and the two dis-
cussed together. It is as follows:

" *Second.* If the jury find, from the evidence, that the city of Little Rock raised the grade of Louisiana street, in the said city of Little Rock, so as to cause water, in ordinary storms, which hitherto flowed off by another avenue, to flow into the 'town branch,' without making said 'town branch' of sufficient capacity to carry off such increased volume of water, whereby said close, of said plaintiff, was overflowed and his property destroyed, they will find for the plaintiff."

The third instruction asked by the plaintiff, and given by the court, is covered in the concluding portion of the second, just quoted, and raises no other question than those already presented.

Judge Wilshire testified, at the trial, that he had known the "town branch" for some time, and that he never knew of it overflowing at the point in front of the plaintiff's house, until Louisiana street was graded ; that, before Louisiana street was graded, the water passed off on the low land, in front of plaintiff's house, and that the grading of Louisiana street had the effect of backing up the water on the premises; that after the street was graded, the house which the plaintiff occupied was about eighteen inches below the grade.

Willis, the appellee, testified that the street was graded in 1869, and that there was not sufficient room in the ditch, *after that*, for the water to get through—there is a pipe leading into the "town branch," and it got filled up with brush. On cross examination he said: " I claim the damage was caused by the grade of the street being raised higher than the house;" that he was not damaged by the overflow before the grade of the street was raised; that the " town branch " carries off the ordinary rain falls and does now, and overflows after unusual rains only.

It is no easy matter to lay down a precise rule embracing the torts for which a private action will lie against a munici- pal corporation ; but it may be generally stated, that the lia- bility of a body created by statute, must be determined by

the statute which creates it, for it is clear that a right of action against a municipal corporation does not exist at common law.

That a municipal corporation may be made liable for damage, in a case like that presented by the record of this case, there is no doubt; but that is not the question; the question is, does the statute, creating the city of Little Rock, give to the appellee a right of action for the wrong complained of? This question must be determined, not by what ought to be, but by the plain letter of the statute. Our duty is to declare what the law is, and not what it ought to be.

If the appellee is entitled to a right of action for the grievances of which he complains, that right exists only by reason of some statute, and in the ascertainment of this fact, the statute itself must speak. The tenth section of the act, creating municipal corporations, declares that the cities and towns shall be " capable to sue and be sued;" but this language is not sufficient to fix the *liability* of the city in any cause. The seventh section of the act declares " the city council shall have the care, supervision and control of all the public highways, bridges, streets, alleys and commons within the city, and cause the same to be kept open and in repair, and free from nuisances."

The eighteenth section provides, the City Council shall have power to lay off, open, widen, straighten and establish, keep in order and repair, all streets, alleys and public grounds, etc., and to open and construct, and keep in repair *sewers* and *drains*.

These are the sections granting power to the city of Little Rock, upon the subject of streets, drains and sewers, and, as will be observed, none of them are mandatory. Sections eighty-five and eighty-six fix the liability of cities and towns, in case injury is done the property of individuals by reason of grading the streets, and prescribes the mode of ascertaining the same, but this fact, of itself, is no argument to prove that the city would not be liable for damages sus-

tained by an individual, growing out of a neglect on the part of the city to keep its sewers in repair.

Whether or not a city is liable to a suit for damages, in a case presenting facts like the one at bar, depends upon circumstances. For the construction of a sewer which has not the capacity to carry off the ordinary or extraordinary rain falls, the city cannot be made responsible, and the reason for this is, that a city cannot be held to answer for an error of judgment, committed by a body, created by law, and clothed with discretion to determine the width and depth of drains and sewers; to hold a city responsible, under such circumstances, would be to vest the power of judging of the proper grade of streets and the width and depth of sewers in the judiciary, instead of the City Council, where the Legislature placed it. Where a city prescribes the grade of a street, or the capacity of a drain, and it is not constructed as directed, or in such an unskillful manner as to damage persons adjacent thereto, in that event, the city is liable. The law is, that for the exercise of a lawful power, which by law is vested in the judgment and discretion of a public body for the good of the whole, that no injury, for which an action will lie, can be committed—*salus populi suprema est lex*—but that for an imperfect, negligent, unskillful execution of the thing ordained to be done, an action will lie in the absence of an express statute. The acts of municipal corporations are divided into two classes; *first*, those requiring Legislative, or what is sometimes called judicial action, and *second*, those acts which are wholly ministerial. For the former, an action will not lie; but for the latter, it will.

One question presented by the record is: was the city bound to construct a sewer or drain of sufficient capacity to carry off all the water which might flow into the "town branch," or was it only bound to keep the drain in repair?

The testimony of Williams is, that the drain, commonly called the "town branch," was a natural water-course, and that the route was changed as far back as 1844. The evidence

37

of the appellee, himself, and the two others who were ex-
amined as witnesses, is that the "town branch" did not over-
flow so as to damage the property where the appellee re-
sided until the streets were graded in his front.   Williams
further testifies that, prior to the war (1861), the "town
branch," as changed, was sufficient to carry off all water find-
ing its way thereto, without overflowing the property in
question, and during the war, that the timber adjacent to the
city was cut down and carried away, and that the natural
objects, which retarded the surface water from finding its way
to the river, had been removed, and that since then the "town
branch" had occasionally overflowed on account of the re-
moval of the obstacles which, at one time, retarded the rapid
flow of water into the "town branch."

In the case of *Mills et al. vs. City of Brooklyn*, 32 *N. Y.*, 489,
the plaintiff's lot, at the intersection of the avenues men-
tioned, was on low ground; that, before the paving of the
streets, the water flowing thereon was absorbed by the earth,
instead of remaining on the surface; that the grade of the
streets was higher than his lot; that a heavy rain fell, inun-
dated his premises, causing the wall of his house to settle and
crack, for which, to recover damages, he brought suit.   It
also appeared that the city had put down a sewer which was
insufficient to carry off all the surface-water which fell dur-
ing a violent storm.   In speaking of the insufficiency of the
sewer, Judge Denio said:   "After reviewing the cases of
*Cole vs. The Trustees of Medina*, 27 *Barb.*, 218 ; *Cavanaugh vs.
The City of Brooklgn*, 38 *Barb*, 232; *Rochester White Lead
Company vs. City of Rochester; Hudson vs. Mayor of New York*,
5 *Selden*, 153, it may, therefore, be laid down as a very clear
proposition, * * * that an action would not lie against
the corporation, though the jury should find a *sewer was neces-
sary*, and that the defendants *were guilty of a dereliction of duty
in not having constructed one.*"

The facts, as to the location of the property, in the case of
*Mills vs. City of Brooklyn*, 32 *N. Y.*, 489, are not dissimilar to

the facts in this case—the testimony in both cases going to show that no damage ensued until the streets were raised to a higher grade, in front of the property, than ,the lots on which the buildings were situate.    ·  .

There is no testimony in this case showing that the "town branch" was out of 'repair, or that the injury, of which the appellee complains, grew out of any negligence on the part of the City Council, or the other officers of the city.   It is true, there is some testimony tending to prove that the sharp angle made at the corner of Third and Main streets, might have a tendency to back the water and retard its escape; but this.angle was in the drain prior to 1861, and Williams testifies that, at that time, it was sufficient to carry off the water.   The appellee, himself, testifies that a pipe, leading into the '" town branch," got filled up with brush, and that the damage which he sustained arose from, not the defective construction, or the neglect to keep the " town branch" in repair, but because of the grade of the street " being raised *higher than his house.*"

The court instructed the jury, that if they found, " from the evidence, that the city of Little Rock raised the grade of Louisiana street, so as to cause water, which hitherto flowed off by another avenue, to flow into the ' town branch,' with• out making said ' town branch' of sufficient capacity to carry off such increased volume of water, whereby said close of said plaintiff was overflowed and his property destroyed, they will find for the plaintiff."

This instruction is erroneous, as the City Council and the corporation which they represent, were only bound to keep the sewer *in repair*; nor is it true that the city was, or is, bound to build sewers to carry off the surface-water, which, by reason of the grading of streets, at one time flowed by another and different route.   This very point was presented in the case of *Carr vs. The Northern Liberties, 35 Pa. St.*, 324; and it was there held that if a drain ceased to be of sufficient capacity, which it at one time possessed; in consequence of

the increase of population and the greater extent of territory graded and built upon, a corporation having municipal powers was not responsible or liable for damage arising from an overflow.

We are of opinion that appellant's instruction, numbered two, should not have been given; that her instruction, numbered eight, should have been given, and that instructions, numbered two and three, of the appellee, to which objection was made, should not have been given.

For the errors aforesaid the judgment is reversed, and the cause remanded.