Elwanda WHITE *v.* CITY OF NEWPORT

96-1 933 S.W.2d 800

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*H. David Blair,* for appellant.

*Stanley Montgomery* and *David C. Schoen,* for appellee.

BRADLEY D. JESSON, Chief Justice. At issue in this case is the constitutionality of Ark. Code Ann. § 21-9-301 (Repl. 1996), known as the municipal tort-immunity statute. The appellant claims that the statute violates Article 2, § 13, and Article 5, § 32, of the Arkansas Constitution. The trial court upheld the constitutionality of § 21-9-301, and we affirm.

The city of Newport owns and operates an ambulance service. On May 18, 1992, Dorse White, the husband of the appellant, Elwanda White, began experiencing heart-attack symptoms. Mrs. White dialed 911, and the city's ambulance service responded. Mr. White was taken to Harris Hospital in Newport, then transferred to Baptist Medical Center in Little Rock. He died on May 30, 1992. On April 29, 1994, Mrs. White filed a complaint against the city alleging that the failure of the ambulance attendants to perform resuscitative measures on her husband constituted negligence which

was the proximate cause of his death. The complaint further alleged that the city's operation of the ambulance service was a proprietary, as opposed to a governmental, activity. The city moved to dismiss the complaint on the basis that it was immune from liability, pursuant to § 21-9-301. The trial judge considered Mrs. White's argument that the statute violated Article 2, § 13, and Article 5, § 32, but he found no constitutional infirmity. Mrs. White's complaint was dismissed, and she brings this appeal.

Article 2, § 13, of the Arkansas Constitution reads as follows:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly, and without delay, conformably to the laws.

The pertinent portion of Article 5, § 32, of the Arkansas Constitution reads:

> [N]o law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property. . . .

Mrs. White contends that the municipal tort-immunity statute abridges her rights under these two constitutional provisions. To fully understand the issues presented, it is helpful to take a brief glimpse into the history of municipal tort immunity in Arkansas. Our earliest opinions on the subject, *City of Little Rock v. Willis*, 27 Ark. 572 (1872), and *Mayor of Helena v. Thompson*, 29 Ark. 569 (1874), offer a brief, if somewhat confusing, exploration of the municipal-immunity concept. A careful reading of those cases does indicate an acceptance of the most basic idea that cities might be held liable for negligence in certain limited situations, though not in others. In *Trammell v. Town of Russellville*, 34 Ark 105 (1879), we elaborated on the ideas that were touched upon in *Willis* and *Thompson*. For the first time, we expressly introduced the concept that a city could be held accountable for its negligence while performing in a *proprietary* capacity, but could not be held liable for its negligence while performing in a *governmental* capacity. The governmental–proprietary distinction became the polestar of municipal immunity cases through the 1950's. A police officer's enforcement of the law, *Franks v. Town of Holly Grove*, 93 Ark. 250, 124 S.W. 514 (1910); the operation of an electric plant, *City of Little*

*Rock* v. *Holland*, 184 Ark. 381, 42 S.W.2d 383 (1931); the maintenance of a city swimming pool, *Yoes* v. *City of Fort Smith*, 207 Ark. 694, 182 S.W.2d 683 (1944); and the operation of a garbage truck, *Kirksey* v. *City of Fort Smith*, 227 Ark. 630, 300 S.W.2d 257 (1957), among other activities, were all found to be governmental in nature, thus affording the respective municipalities immunity from liability for negligence.

But, in 1968, the law took a sharp turn. We decided in *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968), that municipal tort immunity imposed such an injustice on individual victims of a city's negligence that such immunity should be abolished. In response to our decision, the legislature passed Act 165 of 1969, which provided municipalities with immunity from tort actions. In 1993, the legislature added, for clarification purposes, the proviso that a city could be held liable to the extent it carried liability insurance. That law is now codified as Ark. Code Ann. § 21-9-301, the statute which is the subject of this case.

Ark. Code Ann. § 21-9-301 reads as follows:

> It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state shall be immune from liability and from suit for damages, except to the extent that they may be covered by liability insurance. No tort action shall lie against any such political subdivision because of the acts of its agents and employees.

This statute faced its first constitutional challenge in the case of *Hardin* v. *City of DeValls Bluff*, 256 Ark. 480, 508 S.W.2d 559 (1974). In *Hardin*, the appellant claimed, as does the appellant in this case, that the municipal tort-immunity law violated Ark. Const., art. 2, § 13, because it deprived her of her right to obtain redress for her injuries. We upheld the constitutionality of the statute. In doing so, we reviewed the *Willis* and *Trammell* cases and made the following observation:

> It thus appears that, from the outset, our court has recognized that the drafters of our Constitution, despite Article II, Section 13 of the 1874 Constitution, never had in mind that one, without legislative authority, could receive redress for asserted wrongs against counties and cities acting in their

governmental capacities.

The constitutionality of § 21-9-301 was also upheld in the later cases of *Chestnut* v. *Norwood*, 292 Ark. 498, 731 S.W.2d 200 (1987), and *Thompson* v. *Sanford*, 281 Ark. 365, 663 S.W.2d 932 (1984). Our research reveals no cases, nor do the parties cite any cases, in which the statute was the subject of a challenge under Article 5, § 32, of the constitution.

Mrs. White's argument on appeal has three components. First, she discounts the applicability of the *Hardin* decision. She argues that our determination of § 21-9-301's constitutionality in *Hardin* was limited to cases in which the statute was applied to a city acting in a governmental capacity. Second, she claims that, at the time our 1874 constitution was adopted, a citizen had a common-law right to sue a city for negligence committed while the city was acting in a proprietary capacity. She relies on the *Willis* and *Thompson* cases in support of that proposition. Third, she reasons that, if she did have a common-law right to sue a city for negligence committed in a proprietary capacity, the legislature is prevented, by virtue of the two above-mentioned clauses of the constitution, from abrogating such a right. Mrs. White's success on appeal necessarily depends on our acceptance of the third component of her argument. Thus, we address first the question of whether the legislature may abrogate a remedy that existed at common law.

 In the case of *Emberson* v. *Buffington*, 228 Ark. 120, 306 S.W.2d 326 (1957), we addressed a constitutional challenge to the Arkansas automobile guest statute. We held that the statute, which prohibited persons from recovering damages from a driver who was related to them, violated Article 2, § 13, of our constitution. Implicit in our opinion was the idea that the legislature could not, under any circumstances, abolish a person's right to recover for his injuries. In retrospect, our analysis in that case was too limited. In a well-reasoned dissenting opinion, Justice George Rose Smith foresaw the problems that could result from an inflexible application of Article 2, § 13. Such a reading of the constitution, he said, "crystallizes all common law rights of action, putting them beyond the reach of legislative change to meet new conditions". Our analysis, he stated, should focus on "how far the constitution permits the legislature to go." Similarly, courts from other jurisdictions have taken the approach that constitutional provisions concerning a citizen's right to redress were adopted to prevent arbitrary or unreason-

able legislative abrogation of a cause of action. See *Estate of Cargill* v. *City of Rochester*, 119 N.H. 661, 406 A.2d 704 (1979), appeal dismissed, 445 U.S. 921 (1980); *Lebohm* v. *City of Galveston*, 154 Tex. 192, 275 S.W.2d 951 (1955); *Troyer* v. *Department of Health & Social Services*, 722 P.2d 158 (Wyo. 1986). In the federal due process context, see *Duke Power Co.* v. *Carolina Environmental Study Group, Inc.*, 438 U.S. 59 (1978); *Silver* v. *Silver*, 280 U.S. 117 (1929). These cases, along with Justice Smith's dissent in *Emberson*, convince us that the legislature must be permitted to alter the common law when it stands in the way of a reasonable public-policy objective. The common law is not a static or a fixed code, forever unchangeable by the representatives of the people. To read constitutional provisions such as the ones in this case to say that the common law must remain as it stood in 1874 would prevent the legislature from adjusting the law to the changes of time and circumstance. A literal reading of Article 2, § 13, or Article 5, § 32, could prevent the use of such concepts as comparative fault, or the abolition of such outdated causes of action as alienation of affection.

In light of this analysis, we must not restrict our constitutional inquiry to the simple question of whether § 21-9-301 abolishes or diminishes Mrs. White's right to recover from the city of Newport. To do so would be to repeat the same mistake we made in *Emberson*. Instead, we must ask whether the legislature acted reasonably when it abolished or diminished that right. In section four of Act 165 of 1969, the legislature declared that, in the absence of municipal tort-immunity, cities were facing the imminent threat of bankruptcy and vital public services were in danger of being discontinued. In *Thompson* v. *Sanford, supra*, we recognized that the municipal tort-immunity statute works in such a way that it makes city governments bear some responsibility for their negligence, by allowing recovery to the extent of insurance coverage, but prevents the cities from being exposed to high judgments that would destroy them. We find the legislature's enactment of the municipal tort-immunity statute to be a reasonable means of achieving a permissible public-policy objective. Therefore, we hold that the statute does not violate Article 2, § 13, or Article 5, § 32, of the Arkansas Constitution.

Affirmed.