# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2816
_____

Jane Doe, (originally named as John Doe individually and as a parent and next
friend to Jane Doe, a minor)

*Plaintiff - Appellant*

v.

Dardanelle School District

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: April 18, 2019
Filed: June 27, 2019

_____

Before COLLOTON, GRUENDER, and ERICKSON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Jane Doe appeals the district court's[1] grant of Dardanelle School District's
("Dardanelle") motion for summary judgment and its partial denial of her motion for
leave to amend her complaint.  We affirm.

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern
District of Arkansas.

While Doe was a student at Dardanelle, she claims that another student, R.C., sexually assaulted her at least twice. The first incident took place in October 2014 during a kickball game. While running the bases, R.C. ran into Doe, who was standing on second base. Doe testified that R.C.'s upper arm "bump[ed]" her breast and that he called her a bitch. Doe said she did not know why R.C. called her a bitch but that she may have been "blocking his way" and that the comment may have been "out of frustration."

The second incident took place in October 2015. Doe and R.C. were seated next to each other while watching a movie with the lights off in a home economics class. Doe testified that R.C. reached up her shorts and touched the outside of her "private parts." After Doe pushed him away, R.C. attempted to force Doe to touch his groin. Doe pulled her arm away, and R.C. "grabbed" Doe's breast over her shirt. Doe testified that nobody else at the table at which she and R.C. sat saw or heard what happened.

Doe reported both incidents to Dardanelle administrators, who discussed them with R.C. Alleging that Dardanelle was deliberately indifferent, Doe filed a complaint under 20 U.S.C. § 1681 *et seq*. ("Title IX") and 42 U.S.C. § 1983 in May 2017. Doe later moved to amend the complaint, and the district court denied her motion in part. Dardanelle moved for summary judgment, and the district court granted its motion. Doe appeals both orders.

We review a grant of summary judgment *de novo,* considering the facts "in the light most favorable to the nonmoving party." *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, *PA*, 847 F.3d 594, 597 (8th Cir. 2017). A motion for summary judgment will be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The district court explained that Title IX and § 1983 have the same deliberate indifference standard and concluded that Dardanelle was not deliberately indifferent.[2] It reasoned that the first incident did not put Dardanelle on notice that R.C. might sexually assault Doe and that though Dardanelle might have taken more "prudent" steps after the second incident, it is not liable for "failing to take the most reasonable course of action or even for responding negligently." *Doe v. Dardanelle School District*, No. 4:17cv00359, 2018 WL 3795235, at *4 (E.D. Ark. Aug. 9, 2018). It additionally observed that even if Dardanelle were deliberately indifferent, the harassment was not "so severe, pervasive, and objectively offensive" that it deprived Doe "of access to the educational opportunities or benefits provided by the school." *Id.* (*quoting Davis*, 526 U.S. at 650). The district court therefore granted Dardanelle's motion for summary judgment.

"Deliberate indifference is a stringent standard of fault that cannot be predicated upon mere negligence." *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010) (internal quotation marks and citation omitted). Under Title IX, Dardanelle is liable only if its

---

[2]Doe does not argue that the district court erroneously applied the same deliberate indifference standard to her Title IX and § 1983 claims. Thus, we do not address whether the district court should have separately considered whether Dardanelle was deliberately indifferent to unconstitutional conduct and the rights of students under Doe's § 1983 claim and to student-on-student harassment under her Title IX claim. *Compare Plamp v. Mitchell School Dist. No. 17-2*, 565 F.3d 450, 459, 461 (8th Cir. 2009) (requiring deliberate indifference to or tacit authorization of unconstitutional misconduct for § 1983 failure-to-act claims and deliberate indifference to the rights of students for § 1983 failure-to-train claims), *with Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (requiring "deliberate indifference to known acts of harassment in . . . programs or activities" for Title IX student-on-student harassment claims).

"deliberate indifference effectively 'cause[d]' the discrimination." *Davis*, 526 U.S. at 642-43 (alteration in original). We "should refrain from second-guessing the disciplinary decisions made by school administrators." *Id*. at 648. Summary judgment is proper unless Dardanelle was "clearly unreasonable in light of the known circumstances." *Id*. at 648-49.

First, Doe claims that Dardanelle was deliberately indifferent because it had "received at least one other report from a second student, T.R., complaining that R.C. had attempted to touch her inappropriately." R.C. said that he sometimes hit T.R. on the arm. Vice Principal Lynn Balloun discussed T.R.'s complaint with R.C., who promised that he would stop. The record does not indicate when T.R. made the complaint. Even if we assume the complaint came before the first incident with Doe as she claims, we cannot say that Dardanelle's response to the complaint "effectively caused" the first incident with Doe. *See Davis*, 526 U.S. at 642.

Doe next argues that Dardanelle's "inaction in the face of" the first incident involving Doe "led to the second, more severe assault." But Dardanelle did take action after the first incident. Doe reported the first incident to a teacher and to Principal Marcia Lawrence. In response, Balloun and Counselor Cynthia Hutchins discussed the incident with R.C. Both Balloun and Hutchins "sternly" talked to R.C. "about proper behavior."

While Balloun's notes from his discussion with R.C. after the first incident indicate that he believed R.C. had touched Doe several times, Doe testified in deposition and without reservation that R.C. had never touched her before the kickball incident. She also testified that, according to her memory of the 2014 school year, there was only one incident when R.C. touched her. Accepting Doe's statement is not a "failure to apply the proper summary judgment standard," as Doe contends. Rather, the unambiguous testimony of the only witness with firsthand knowledge demonstrates that there is no genuine dispute of fact. *Cf. Prosser v. Ross*, 70 F.3d

1005, 1008 (8th Cir. 1995) ("We have held that a party cannot avoid summary judgment by contradicting his own earlier testimony.")

Dardanelle's response to the allegation that R.C. ran into Doe during a kickball game, hitting her breast with his upper arm and calling her a bitch, is not "clearly unreasonable in light of the known circumstances." *See Davis*, 526 U.S. at 648-49. Indeed, the "clearly unreasonable standard is intended to afford flexibility to school administrators." *Estate of Barnwell by and through Barnwell v. Watson*, 880 F.3d 998, 1007 (8th Cir. 2018) (internal quotation marks omitted). Thus, Dardanelle's alleged deliberate indifference did not effectively cause the second incident.

Doe additionally argues that Dardanelle's response to the second incident "exacerbated [her] injuries." Dardanelle again took steps to address R.C.'s misconduct. Immediately after the incident, Doe went to the school office to speak with Lawrence. According to Lawrence, Doe did not tell her at that time that R.C. had tried to touch her vagina, but Doe testified that she had told Lawrence.[3] During the conversation, Lawrence asked Doe whether she was "feeling more upset about this than [she was] showing" and called a school counselor to talk with Doe.

Lawrence referred the incident to Balloun, who met with R.C. and the school resource officer, the school's police officer. Balloun testified that he and the resource officer questioned R.C. "extensively," and R.C. denied the incident. Lawrence and Balloun also talked with the home economics teacher "about keeping a light on" during movies and informed her that some "inappropriate touching" had been alleged. They told the teacher to separate Doe and R.C. in her class. R.C. was eventually moved to a different class in April 2016. Balloun testified that after the second

---

[3]We view the facts "in the light most favorable to" Doe, giving her "the benefit of all reasonable inferences that can be drawn from the record." *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

incident, he "tried to pay particular attention, as it was warranted," to R.C. and that Lawrence likewise "was trying to keep an eye on" Doe. In light of the fact that R.C. denied the second incident and nobody else in the home economics class witnessed it, Dardanelle's response was not "clearly unreasonable in light of the known circumstances." *See Davis*, 526 U.S. at 648-49.

Doe claims that Dardanelle's response to the incidents led to depression, self-harm, and isolation, as evidenced by her counselor's notes. Doe told her counselor that she was afraid that R.C. would "harm her again" and that R.C. "calls her names." But Doe testified that after the October 2015 incident she only interacted with R.C. once and sometimes saw him at Walmart. Further, we agree with the district court that, even if Dardanelle were deliberately indifferent, it was not "deliberately indifferent to sexual harassment . . . that is so severe, pervasive, and objectively offensive that it can be said to [have deprived Doe] of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650. Doe's grade point average increased in both her junior and senior years, and she graduated on time. *See also id.* at 652 ("Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender."). In sum, the district court properly granted Dardanelle's motion for summary judgment.

Finally, Doe argues that the district court should have granted her motion to amend her complaint in full. Doe sought to add a negligence claim against Dardanelle through a direct action against its insurance provider and a claim that Arkansas Code Annotated section 21-9-301 violates the Arkansas constitution.[4] The district court

---

[4]Section 21-9-301 provides that school districts "shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance."

denied her motion as futile.[5]  "We review the denial of leave to amend for abuse of discretion and questions of futility *de novo*."  *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009).  "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (internal quotation marks omitted).  "[I]n reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),] pleading standard . . . ."  *Id.* at 850-51.  Under the *Twombly* standard, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

We agree with the district court that Doe's negligence claim is futile.  As the district court correctly noted, Dardanelle's insurance policy includes an exclusion for claims or suits "alleging **Sexual Abuse and Molestation**," and Doe does not contest that the policy contains an exclusion against such lawsuits.  The court therefore concluded that the plaintiff's proposed amendment to add a direct claim against the insurer is futile.

Doe argues that the district court "erred by drawing inferences in [Dardanelle's] favor."  This argument is not persuasive.  Though the district court must take her factual allegations as true and draw all inferences in her favor, *see Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594-95 (8th Cir. 2009), Doe offered no factual basis

---

[5]Doe's motion to amend also included a request to substitute the "parental claim on behalf of Jane Doe with Jane Doe herself."  The district court granted that portion of her motion.

to support the possibility that the policy exclusion does not exist or does not apply. Thus, we agree with the district court that Doe's negligence claim is futile.

Likewise, the district court correctly determined that Doe's Arkansas constitutional claim is futile. It relied on an Arkansas Supreme Court decision holding that Ark. Code Ann. section 21-9-301 is consistent with the same Arkansas constitutional provisions to which Doe points. *See White v. City of Newport*, 326 Ark. 667, 672 (1996). Doe nevertheless claims that the Arkansas Supreme Court "signaled a sea change" in *Bd. of Trs. of Univ. of Arkansas v. Andrews*, 2018 Ark. 12 (2018). She contends that *Andrews* "singled out [the court's] 1996-era caselaw," which includes *White*, "for failing to strictly construe and enforce constitutional provisions." But *Andrews* involved sovereign immunity, and we see no reason why its dicta affects the holding in *White*. Thus, we agree with the district court that this claim is likewise futile.

For the foregoing reasons, we affirm.

_____