The Honorable Stephen D. Bright State Representative 49 Oak Forest Loop Maumelle, Arkansas 72113-6816
Dear Representative Bright:
I am writing in response to your request for an opinion on whether House Bill 1382, currently pending in the 83rd General Assembly (2001 regular session), is constitutional. You express particular interest in whether the bill would withstand an "equal protection" challenge. The bill is entitled "An Act to Make Long-Term Care Affordable and Available for Facility Residents; and for Other Purposes."
RESPONSE
In my opinion Section 13 of House Bill 1382, in particular subsection (a)(3)[1] of that Section, is in all likelihood unconstitutional under Arkansas Constitution, art. 5, § 32 and is also unconstitutional under the so-called "separation of powers" doctrine. There are a number of other constitutional objections that are sometimes alleged against similar damages "caps," including, as you note, an equal protection challenge. In light of my conclusion with regard to art. 5, § 32 and the separation of powers doctrine, however, it is unnecessary to address other commonly asserted bases of challenge in detail. I have summarized some of the case law from around the country on these issues, however, to aid in your review of the matter.
Among other things, House Bill 1382 adds long-term care facilities to the definitions of "medical care provider" and "medical injury" in the subchapter of the code governing medical malpractice actions (the "Medical Malpractice Act" A.C.A. § 16-114-201 to -209 (1987 and Supp. 1999)).[2] The bill also dictates certain nursing facility staffing requirements, and provides for an exclusive cause of action against a licensed long-term care facility for medical injury. With regard to this last-mentioned portion of the bill, Section 13 thereof would amend an existing Arkansas Code provision (A.C.A. § 20-10-1209) (Supp. 1999). The statute (A.C.A. § 20-10-1209) is the last provision contained in a subchapter pertaining to the regulation of long-term care facilities by the Department of Human Services. This provision currently authorizes a private civil cause of action by a long-term care facility resident, his guardian, or personal representative for deprivations or infringements of rights guaranteed in the subchapter. The bill would amend this provision as follows:
SECTION 13. Arkansas Code 20-10-1209 is amended to read as follows:
20-10-1209 Civil enforcement.
 (a)(1) Any resident who is injured by a deprivation or infringement of his or her rights as specified in this subchapter incurs an injury may bring a cause of action against any licensee responsible for the deprivation or infringement therefor if, and only if, such an injury amounts to a medical injury, as defined in 16-114-201. Otherwise, a resident shall not have a private cause of action hereunder; and the cause of action provided for hereunder shall be the sole and exclusive remedy of the resident and shall be governed by the provisions of §§ 16-114-201 through Section 16-114-209, which shall supersede and subsume any other cause of action based on the facts giving rise to the action for medical injury, whether under a theory of tort, negligence, or other statutory or common law right of action.
 (2) The action may be brought by the resident or his or her guardian or by the personal representative of the estate of a deceased resident.
 (3) The action may be brought in any court of competent jurisdiction in the county in which the injury occurred or where the licensee is located to enforce such rights and to recover compensation for actual economic losses, as provided in § 16-114-208(a)(1), and aggregate compensatory damages for pain, suffering, and other non-economic losses for all parties not to exceed one million dollars ($1,000,000) for any medical injury as provided in § 16-114-208 (a)(2), and aggregate
punitive damages for all parties not to exceed five hundred thousand dollars ($500,000) non-economic losses. In order to recover punitive damages, the plaintiff has the burden of proving by a preponderance of the evidence that the defendant knew or should have known, in the light of the surrounding circumstances, that its conduct would naturally and probably result in injury or damage and that the defendant continued such conduct with malice or reckless disregard of the consequences.[3]]
Sections 1 and 14 of the bill, the preamble and the emergency clause, respectively, capture the intention of the measure, in pertinent part as follows:
Section 1.
 It is found and determined by the General Assembly that the cost of claims by residents of long-term care facilities is a significant cost for long-term care facilities; that under present law there is no reasonable limitation upon either the amount of recoveries under such claims, or the procedure utilized or evidence considered in respect to the recoveries, if any, under such claims; that it is necessary to have a reasonable limitation on these matters in order to provide affordable and accessible care for long-term care facility residents.
Section 14.
 It is found and determined by the General Assembly that an emergency exists due to the existence of a significant number of lawsuits and claims which may become lawsuits against long-term care facilities; and that if this act is not made effective at the earliest practicable date then the outcome of these claims and lawsuits will jeopardize the financial stability of the long-term care providers, and therefore, become a threat to the continuing provision for care for the elderly and other requiring long-term care in Arkansas.
Your question is whether House Bill 1382 is constitutional, especially under the equal protection doctrine.
It is important to point out two canons of statutory construction prior to a recitation of the applicable constitutional provisions. Acts of the General Assembly are entitled to a presumption of constitutionality and if it is possible to construe a statute so as to pass constitutional muster, the Arkansas Supreme Court will do so. Ports Petroleum Co. v.Tucker, 323 Ark. 680, 916 S.W.2d 749 (1996). In fact, all doubts are resolved in favor of constitutionality. Reed v. Glover, 319 Ark. 16,889 S.W.2d 729 (1994). A clear incompatibility between a statute and the Constitution must be shown before the statute will be held unconstitutional. Pogue v. Cooper, 284 Ark. 105, 679 S.W.2d 207 (1984). Additionally, the burden of proving a statute unconstitutional is upon the party challenging it. Clinton v. Bonds, 306 Ark. 554, 816 S.W.2d 169
(1991).
In addition, it has often been held that the Arkansas Constitution is not a grant, but a limitation of powers; and the legislature may rightfully exercise the power of the people, subject only to restrictions and limitations imposed by the Arkansas or United States Constitution. Wellsv. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979). While the United States Constitution is a grant of powers, beyond the scope of which the federal government has no power to act, Arkansas' Constitution is a limitation of power. Its provisions list what government cannot do, and in the absence of such limiting language, the state government may act. State v.Ashley, 1 Ark. 513, 538 (1839); St. Louis, I.M.S. Rwy Co. v. State,99 Ark. 1, 14 (1911); Baratti v. Koser Gin Co., 206 Ark. 813, 817 (1944); and Smart v. Gates, 234 Ark. 858, 860 (1961).
In my opinion, Section 13 of House Bill 1382 in all likelihood violates art. 5, § 32 of the Arkansas Constitution, which provides as follows:
 The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted. [Emphasis added.]
The emphasized language, in essentially its current form, has been in existence since the adoption of the Arkansas Constitution of 1874. See,
Publisher's note to art. 5, § 32.[4] The unemphasized language, regarding workers' compensation, was added by Amendment 26 in 1938. It was necessary to amend the original language of art. 5, § 32 in order to authorize the special procedures and limitations pertaining to workers' compensation cases.[5] See Brothers v. Dierks Lumber Coal Co.,217 Ark. 632, 639, 232 S.W.2d 646 (1950).
The Arkansas Supreme Court has stated that "[t]he amendment provides that otherwise, that is, except in cases arising between employer and employee, no law shall be passed limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property."Young v. Tarlton, 204 Ark. 283, 288, 162 S.W.2d 477 (1942). See also,Stapleton v. M.D. Limbaugh Construction Co., 333 Ark. 381, 969 S.W.2d 648
(1998) (general assembly may limit tort liability only when there is an employment relationship between the parties); and Baldwin Co. v. Maner,224 Ark. 348, 273 S.W.2d 28 (1954) (same). It has also been stated that:
 . . . in some of the States, statutes limited the amount of damages to be recovered, where the death of a human being is the subject of an action. But our Constitution provides that "no act of the General Assembly shall limit the amount to be recovered for injuries resulting in death, or for injuries to persons or property, etc. (Art. 5, sec. 32.) The matter of damages is therefore left to juries and the courts.
* * *
 The amount of damages to be recovered is not limited by the statute, and could not be under the constitutional provision above cited. But a jury is not left without restraint in the matter of assessing damages for the death of a minor, or in any other case. If the damages assessed are so enormous as to shock the sense of justice, and to indicate that the verdict is the result of passion or prejudice, the trial judge may set it aside, and if he refuse, this court [the Arkansas Supreme Court], on appeal or writ of error, may do so.
Little Rock and Fort Smith Railway Company v. Barker and Wife,39 Ark. 491, at 511-512 (1882) (Emphasis added).
The plain language of art. 5, § 32 appears to prohibit the statutory damages cap set out in Section 13 of House Bill 1382, at least as to "non-economic" damages. Our constitution states that the General Assembly shall enact no law limiting "the amount to be recovered for injuries resulting in death or for injuries to persons or property. . . ." Clearly, HB 1382's cap on "non-economic" damages for medical injuries in long-term care facilities seeks to limit "the amount to be recovered for injuries resulting in death or for injuries to persons. . . ."[6] In my opinion, therefore, it transgresses the plain language of art. 5, § 32.[7]
One more recent case, however, White v. City of Newport, 326 Ark. 667,933 S.W.2d 800 (1996), appears to adopt a more liberal standard for construing art. 5, § 32. In White, the court upheld the statutory grant of municipal tort immunity as against an art. 5, § 32 challenge. That statute limits municipal liability in tort to the amount of any liability insurance. See A.C.A. § 21-9-301. The court stated that: "[t]o read constitutional provisions such as [art. 5, § 32 and art. 2, § 13] to say that the common law must remain as it stood in 1874 would prevent the legislature from adjusting the law to the changes of time and circumstance. A literal reading of Article 2, § 13, or Article 5, § 32, could prevent the use of such concepts as comparative fault, or the abolition of such outdated causes of action as alienation of affection. . . . Instead, we must ask whether the legislature acted reasonably when it abolished or diminished that right." Id. at 672.[8]
Thus, while the plain language of art. 5, § 32 clearly prohibits the damages cap in House Bill 1382, the Arkansas Supreme Court in White
engaged in an inquiry as to the "reasonableness" of legislation in the face of an art. 5, § 32 challenge. To some degree, this "reasonableness" inquiry is one of fact.
In my opinion, however, the court would be unwilling to extend the "reasonableness" inquiry to a statutory damages cap imposed in favor of private actors. It has been stated with regard to a similar constitutional provision in Kentucky (a state from which much of Arkansas' basic law was derived, see Southwestern Bill Tel. Co. v. Wilkes, 269 Ark. 399,601 S.W.2d 855 (1980)), that:
 . . . a reading of the Constitutional Debates reveals that the delegates envisioned Section 54 as a device that would prohibit the general assembly from enacting laws to curtail recovery in wrongful death cases. Also, to prohibit the general assembly in cases involving bodily injury where railroads were involved from limiting by statute the amount of damages recoverable.
Jacobs v. Underwood, 484 S.W.2d 855, 857 (Ky. 1972).
It is doubtful, in my opinion, that the court would apply the same "reasonableness" analysis to a straightforward effort to cap damages against private corporations. This action appears to be at the very heart of the art. 5, § 32 prohibition. In fact, two years after the White
decision, in a case involving private parties, the court held that art. 5, § 32 prohibited a grant of immunity outside the "employer-employee" relationship and there was no discussion of the "reasonableness" of the enactment. See Stapleton v. M.D. Limbaugh Construction Co.,333 Ark. 381, 969 S.W.2d 648 (1998).
Additionally, the court in White appears to have been more concerned with the legislature's ability to change or abrogate the common law, that is, whether it had ability to abolish actions against municipalities altogether, than whether the resulting damages limit violated art. 5, § 32. ("[t]he common law is not a static or a fixed code, forever unchangeable by the representatives of the people" Id. at 672). TheWhite decision, in my opinion, is therefore sui generis.
I must conclude, therefore, that Section 13 of HB1382, at least as regards "non-economic damages," is in all likelihood unconstitutional under art. 5, § 32.
The constitutionality of the punitive damages cap in HB1382 is somewhat less clear, but in my opinion it may also be unconstitutional under art. 5, § 32.
On the one hand, an argument might be made that punitive damages are not amounts "to be recovered for injuries. . . ." under art. 5, § 32. (Emphasis added). It has been stated that compensation of the plaintiff is not the purpose of punitive damages and such an award may be a windfall to him. Ray Dodge, Inc. v. Moore, 251 Ark. 1036, 479 S.W.2d 518
(1972). Such damages do not depend upon the injury actually suffered by the plaintiff, but instead depend upon the defendant's conduct. Gilmerv. Walt Disney Company, 915 F.Supp. 1001 (W.D. Ark. 1996). It may be argued, therefore, that article 5, § 32 does not apply, because punitive damages are not "amounts to be recovered for . . . death or forinjuries. . . ." (Emphasis added).
On the other hand, it is beyond dispute that plaintiffs pursuing actions for personal injury are, under certain circumstances, authorized to recover punitive damages. In this sense, punitive damages are "amounts to be recovered" in such actions. See e.g., Vickery v. Ballentine,293 Ark. 54, 732 S.W.2d 160 (1987) (wrongful death actions), citing Field v.Huff, 510 F.Supp. 238 (E.D. Ark. 1981). Cf. also Snow et al. v. Grace,25 Ark. 570 (1869) ("[i]n actions for wrongs in a proper case, and upon a sufficient showing, juries are authorized to inflict exemplary or punitive damages . . . but we are not aware that this principle extends to actions ex contractu").
It has been stated, by a leading scholarly authority on the law of damages in Arkansas that "certainly any statutory attempts to limit the amount of punitive damages would raise serious constitutional questions [under art. 5, § 32]." See Brill, Punitive Damages in Arkansas —Expanded? Restricted?, 1990 Ark. L. Notes 25. See also, Note, State exrel. Ohio Academy of Trial Lawyers v. Sheward: Will the Right to A JuryTrial Remain Inviolate?, 53 Ark. L. Rev. 931 (2000) (stating that "though the provision [art. 5, § 32] does not allow the legislature to limit compensatory damages for physical injuries to persons or property, it may not apply to punitive damages. However, it remains undecided if the court would apply this provision to punitive damages." Id. at 963.
Although I cannot state with certainty whether the punitive damages cap in Section 13 of House Bill 1382 is unconstitutional under art. 5, § 32, in my opinion a "serious constitutional question" is raised by the punitive damages cap. Brill, supra.
In my opinion, therefore, House Bill 1382, at least in the respect noted above, is unconstitutional under Arkansas Constitution art. 5, § 32.
Separation of Powers
Statutory damage caps are often challenged as violating the "separation of powers" doctrine. See e.g., Arkansas Constitution, art. 4, §§ 1 and 2. The argument is that the power to reduce jury awards is vested by state constitutions in the judicial branch of government through the practice of "remittitur." This has been held an inherent power of Arkansas courts. Martin v. Rieger, 289 Ark. 292, 711 S.W.2d 776 (1986).
If Section 13 of HB1382 violates art. 5, § 32, it would appear ipsofacto to violate the separation of powers doctrine. If the power to limit recovery for damages in the relevant cases is denied the general assembly by art. 5, § 32, and currently exists in the judicial branch of government, the bill, by definition, would transgress the separation of powers doctrine. Because the art. 5, § 32 issue is clouded somewhat by the Supreme Court's decision in White v. City of Newport, supra, however, I will undertake a separate analysis under the separation of powers doctrine.
Some courts of other states facing the question have held that statutory across-the-board damage caps constitute an impermissible "legislative remittitur" and are thus unconstitutional under the separation of powers doctrine. See e.g., Best v. Taylor Machine Works, 179 Ill.2d 367,689 N.E.2d 1057 (1997) ($500,000 cap on non-economic damages in personal injury, death and injury to property cases is an impermissible "legislative remittitur"); and Sofie v. Fibreboard Corp.,112 Wash.2d 636, 771 P.2d 711 (1989), amended by 780 P.2d 260 (1989) (statute outlining formula for capping non-economic damages for personal injury and death may indeed violate separation of powers; the legislature cannot make the case-by-case determinations necessary for remittitur). Cf.also, Moore v. Mobile Infirmary Association, 592 So.2d 156 (Ala. 1992) ($400,000 cap on non-economic damages in medical malpractice cases is unconstitutional on several grounds and issue of damages must be evaluated on a case-by-case basis); and State ex rel. Ohio Academy ofTrial Lawyers v. Sheward, 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999),reconsideration denied 87 Ohio St.3d 1409, 716 N.E.2d 1170 (1999) (comprehensive tort reform legislation which includes a cap on punitive damages violates separation of powers doctrine).
Other courts facing the question have concluded that similar statutory damage caps do not offend the separation of powers doctrine. See e.g.,Kirkland v. Blaine County Medical Center, 134 Idaho 464, 4 P.3d 1115
(2000) ($400,000 adjustable cap on non-economic damages for death or personal injury did not violate separation of powers doctrine because it is properly within the power of the legislature to establish statutes of limitation, create new causes of action, and otherwise modify the common law); Owens-Corning v. Walatka, 125 Md.App. 313, 725 A.2d 579 (1999)cert. denied 354 Md. 573, 731 A.2d 971 (1999) ($350,000 cap on non-economic damages in personal injury cases did not violate separation of powers doctrine, relying on Murphy v. Edmonds, 325 Md. 342,601 A.2d 102 (1992) (statutory cap on non-economic damages does not violate separation of powers doctrine because legislature has power to change the common law); Pulliam v. Coastal Emergency Services, 257 Va. 1,509 S.E.2d 307 (1999) ($1,000,000 cap on total recovery in action against health care provider does not violate separation of powers doctrine); andEtheridge v. Medical Center Hospitals, et al., 237 Va. 87, 376 S.E.2d 525
(1989) ($750,000 total recovery limit in medical malpractice cases does not offend separation of powers doctrine).
The Arkansas Constitution contains an express "separation of powers" doctrine. Some states have merely an implied doctrine. In Arkansas, the concept is embodied at article 4, §§ 1 and 2, as follows:
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
The law of Arkansas requires a "strict" application of the doctrine. SeeSpradlin v. Arkansas Ethics Commission, 314 Ark. 108, 858 S.W.2d 684
(1993), citing Oates v. Rogers, 201 Ark. 346, 144 S.W.2d 437 (1940). Seealso, Spradlin v. Arkansas Ethics Commission: A Hard-Line Approach toSeparation of Powers, 48 Ark. L. Rev. 755 (1995). Our court has distinguished cases from states with only an implied doctrine and rejects the "blending" or overlapping of powers authorized in some states. SeeSpradlin, supra at 115. The court also stated that "while we may tolerate some blurring of lines between the legislative and executive departments, this court has been very protective of the barrier surrounding the judicial department." Id. at 115, citing Stafford,Separation of Powers and Arkansas Administrative Agencies: DistinguishingJudicial Power and Legislative Power, 7 UALR L.J. 279 (1984).
It has been recently concluded with regard to possible statutory caps on punitive damages in Arkansas that "it seems likely that such a statute would pose a constitutional problem. Most likely this problem would . . . be with . . . the separation of powers doctrine." See, Note, State exrel. Ohio Academy of Trial Lawyers v. Sheward: Will the Right to A JuryTrial Remain Inviolate?, 53 Ark. L. Rev. 931, 963-964 (2000).
As noted previously, Arkansas courts have inherent power to reduce jury awards through the practice of "remittitur." Byrd v. Dark, 322 Ark. 640,911 S.W.2d 572 (1995); Morrison v. Lowe, 274 Ark. 358, 625 S.W.2d 452
(1981); Dierks Lumber Coal Co. v. Noles, 201 Ark. 1088, 148 S.W.2d 650
(1941); S. C. Transport Company v. Barnes, 191 Ark. 205, 85 S.W.2d 721
(1935). The practice apparently pre-dates the adoption of the current constitution. See Walker v. Fuller, 29 Ark. 448 (1874). The court has stated that remittitur is "a well-established rule almost as old as our system of jurisprudence." Missouri Pac. R.R. Co., Thompson, Trustee, v.Newton, 205 Ark. 353, 168 S.W.2d 812 (1943). A court may order remittitursua sponte. McNair v. McNair, 316 Ark. 299, 870 S.W.2d 756 (1994). It has also been held that "[i]mplicit in A.R.C.P. [Arkansas Rule of Civil Procedure] Rule 59 is the trial court's power to grant a new trial where the damages are excessive unless the prevailing party agrees to a remittitur." Id. at 31, citing Williams v. Charles Sloan, Inc.,17 Ark. App. 247, 706 S.W.2d 405 (1986). See also Weidrick v. Arnold,310 Ark. 138, 835 S.W.2d 843 (1992) (Supreme Court's power to adopt rules of procedure in civil cases is grounded in constitutional authority of court). The practice of remittitur is conditional. That is, the court may, in response to a motion or on its own motion, offer the option of reduction of the jury award and if the plaintiff does not consent, the judge may order a new trial. See generally, 25 C.J.S. Damages § 201. But the initial determination of whether the jury award is excessive is the judge's to make.
In St. Louis N.A. Ry. Co. v. Mathis, 76 Ark. 184, 91 S.W. 763 (1905), the Arkansas Supreme Court held a legislative enactment on remittitur unconstitutional. The statute, currently codified at 16-64-124, provides that after a verdict, the judge may, upon a motion for a new trial, indicate the amount by which he feels the verdict excessive and the losing party may then "release all errors" if the prevailing party will "remit" the excessive amount. The statute essentially authorizes the losing party to forego any right of appeal if the prevailing party will agree to the reduced verdict. Otherwise, the verdict is set aside.
Counsel argued that the statute was an "encroachment on the functions of the judiciary." See 76 Ark. at 189 (on rehearing). The court agreed that the statute impermissibly interfered with its appellate jurisdiction, stating "[w]e . . . hold that it was beyond the power of the Legislature to prohibit an inquiry in this court as to the sufficiency of the evidence to sustain the amount of damages assessed by a jury. . . ." Id.
at 192.[9] See also, Dorey v. McCoy, 246 Ark. 1248A, 442 S.W.2d 202 (1969) (supplemental opinion on rehearing).
The power to second-guess the excessiveness of a jury verdict in Arkansas is thus placed within the judicial branch. In addition, it has stated that in Arkansas "[t]here is no definite and satisfactory rule to measure compensation for pain and suffering and the amount of damages must depend on the circumstances of each particular case." McElroy v. Benefield,299 Ark. 112, 771 S.W.2d 274 (1989). Obviously, the legislative branch of government is not able to determine the issue under the circumstances of each particular case.
In my opinion, because the judicial branch in Arkansas has inherent power to determine the excessiveness of jury verdicts and to order remittitur, the statutory damage cap in House Bill 1382 (at least as to non-economic compensatory damages) in all likelihood violates the separation of powers doctrine. Under the Arkansas Constitution, the power to reduce jury awards and to thereby limit damages is confined to the judicial branch of government. Any attempt by the legislative branch to insert itself into this determination therefore violates the separation of powers doctrine.See also, Little Rock and Fort Smith Railway Company v. Barker and Wife,supra ("the matter of damages is . . . left to juries and the courts").
Several other constitutional avenues of challenge might be brought against the constitutionality of Section 13 of the bill and are often brought against similar provisions in other states. I do not deem it necessary, in light of my conclusions above, to engage in a full-scale analysis of these arguments. Because you have specifically inquired about one such argument, however (equal protection), I will set out a quick summary of the available arguments and some case law authority from other jurisdictions on the points.
The Right to a Jury Trial
Arkansas Constitution, art. 2, § 7 provides in pertinent part that: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law. . . ." House Bill 1382's potential infirmity under this provision is that, by placing an across-the-board cap on damages, the bill takes away a plaintiff's right to have his damages assessed and awarded by the jury.
I have found no satisfying evidence of how the Arkansas Supreme Court would address this right in the context of a statutory damages cap in medical injury cases. Under Arkansas law, a judge or judges may constitutionally reduce a damage award (in the form of remittitur) without transgressing the plaintiff's right to a jury trial. See,Arkansas Valley Land Cattle Co. v. Mann, 130 U.S. 69 (1889) (upholding practice of remittitur as against a 7th Amendment challenge. But seeDimick v. Schiedt, 293 U.S. 474 (1935) (calling into question the constitutionality of the doctrine, but refusing to overturn it). It thus may be argued that the right to a jury trial is similarly not transgressed when another branch of government (the legislative branch) undertakes similar action. It has been stated however, that even the judicial doctrine of remittitur "rests on a constitutional basis of clay" with regard to jury trial rights and as a consequence is applied with restraint. Bonura v. Sea Land Services, Inc., 512 F.2d 671 (5th Cir. 1975). See also, for an excellent discussion of the history and constitutionality of remittitur, Note, Best v. Taylor Machine Works, TheRemittitur Doctrine, and the Implications for Tort Reform, 94 NW. U.L. Rev. 227 (Fall 1999).
In addition, at least two factors distinguish judicial remittitur from "legislative remittitur." First, judicial remittitur is based upon the facts of particular cases. Second, judicial remittitur is optional with a plaintiff. These distinctions, in my opinion, have constitutional implications with regard to whether the right to a jury trial has been infringed.
The courts of various states are divided on the question of whether statutory damage caps violate jury trial rights. Some courts have held that statutory damages caps on non-economic or punitive damages violate the right to a jury trial. See e.g., State ex rel. Ohio Academy of TrialLawyers v. Sheward, supra; Lakin v. Senco Products, Inc., 329 Or. 62,987 P.2d 463 (1999) ($500,000 cap on non-economic damages in personal injury and property damage cases violates right to trial by jury; damages must be assessed on a case-by-case basis); Smith v. Schulte, 671 So.2d 1334
(Ala. 1995) ($1,000,000 cap on total recovery in medical malpractice cases violates right to trial by jury); Henderson v. Alabama PowerCompany, 627 So.2d 878 (Ala. 1993) ($250,000 punitive damage cap in Tort Reform Act violates right to jury trial) called into doubt as to punitive damages in Oliver v. Towns, 738 So.2d 798 (Ala. 1999) ; Moore v. MobileInfirmary Association, supra ($400,000 cap on non-economic damages in medical malpractice cases is unconstitutional on several grounds and issue of damages must be evaluated on a case-by-case basis); and Sofiev. Fibreboard Corp., supra (statute outlining formula for capping non-economic damages for personal injury and death violates right to trial by jury).
Other cases have held that statutory damage caps do not violate the right to a trial by jury. See e.g., Kirkland v. Blaine County Medical Center,supra ($400,000 adjustable cap on non-economic damages for death or personal injury did not violate Idaho constitutional provision guaranteeing that right of trial by jury shall remain inviolate); Pulliamv. Coastal Emergency Services, 257 Va. 1, 509 S.E.2d 307 (1999) ($1,000,000 cap on total recovery in action against health care provider does not violate right to jury trial); Seminole Pipeline Company, Mapcov. Broad Leaf Partners, Inc., 979 S.W.2d 730 (Tex.Ct.App. 1998) (statutory cap on punitive damages affects only public punishment interests and does not infringe on plaintiff's right to a jury trial);Adams v. Children's Mercy Hospital, et al., 832 S.W.2d 898 (Mo. 1992)cert. denied 506 U.S. 991 (1992) ($350,000 cap on non-economic damages against a health care provider does not violate right to trial by jury because determining the permissible remedy involves a determination of law rather than fact and occurs after jury has completed its constitutional task); Murphy v. Edmonds, supra (in abrogating any cause of action for non-economic tort damages in excess of $350,000, General Assembly has removed the issue from judicial arena); Robinson v.Charleston Area Medical Center, 186 W. Va. 720, 414 S.E.2d 877 (1991) ($1,000,000 statutory cap on non-economic damages in medical malpractice cases did not violate "re-examination" clause of West Virginia Constitution which states that right of trial by jury, if required by either party, shall be preserved and no fact tried by jury shall be reexamined other than according to rule of court or law); Samsel v.Wheeler Transport Services, 246 Kansas 336, 789 P.2d 541 (1990) ($250,000 cap on non-economic tort damages does not violate right to jury trial);Etheridge v. Medical Center Hospitals, et al., supra and Johnson v. St.Vincent Hospital, 273 Ind. 374, 404 N.E.2d 585 (1980) abrogationrecognized 652 N.W.2d 543 (Ind. 1995) ($500,000 total recovery cap on medical malpractice injury not violative of right to trial by jury).
I cannot, therefore, come to any definite conclusion as to whether HB 1382 violates art. 2, § 7 and the constitutional right to a jury trial. I can state, however, that a serious constitutional question is presented in this regard.
Equal Protection
Arkansas Constitution, art. 2 § 3 provides in pertinent part that "The equality of all persons before the law is recognized, and shall ever remain inviolate. . . ." See also United States Constitution, Amendment 14 (nor shall any state . . . deny to any person within its jurisdiction the equal protection of the laws"). It is argued that statutory damage caps violate equal protection in a number of ways. First, it has been argued in cases in which the cap applies only to medical claims or health-related claims, that such legislation "creates a favored class of tort-feasors" and creates further subclasses by shielding "those health care providers whose actions are the most egregious." See, Moore v.Mobile Infirmary Association, supra at 166-167. It is also alleged that such provisions, because they preclude full recovery of only those most severely injured, create classifications based upon the severity of the injury. Id. Those with the most severe injuries will have their compensation reduced under across-the-board statutory damages caps, while plaintiffs with lesser injuries will be fully compensated.
Some courts have been persuaded by such arguments. See e.g., Smith v.Schulte, 671 So.2d 1334 (Ala. 1995) cert. denied 517 U.S. 1220 (1996) ($1,000,000 cap on total recovery in medical malpractice cases violates right to equal protection of the laws); Moore v. Mobile InfirmaryAssociation, supra; Brannigan v. Usitalo, 134 N.H. 50, 587 A.2d 1232
(1991) ($875,000 cap on non-economic damages in person injury actions denies more severely injured persons equal protection of the laws, citingCarson v. Maurer, 120 N.H. 925, 424 A.2d 825 (1980) ($250,000 cap on non-economic damages in medical malpractice cases violates equal protection guarantee)); Arneson v. Olson, 270 N.W.2d 125 (N.D. 1978) ($3000,000 limitation on recovery in medical malpractice cases violates equal protection); and Wright v. Central Du Page Hospital Association,63 Ill.2d 313, 347 N.E.2d 736 (1976) ($500,000 cap on medical malpractice cases violated equal protection of the laws).
Other courts have not been convinced. See e.g., Verba v. Ghaphery,
___ S.E.2d ___ (W.Va. 2000) (2000 WL 1827349) ($1,000,000 statutory cap on non-economic damages in medical malpractice actions did not violate equal protection doctrine and is supported by rational basis); Scharrel v.Wal-Mart Stores, Inc., 21 Colo. Journal 651, 949 P.2d 89 (1997) ($250,000 to $500,000 cap on non-economic damages (up to judge) does not violate equal protection of the laws, relying on Scholz v. MetropolitanPathologists, P.C., 851 P.2d 901 (Colo. 1993) ($250,000 statutory cap on non-economic damages against health care providers does not violate equal protection)); Murphy v. Edmonds, supra ($350,000 statutory cap on non-economic damages in personal injury actions does not deny equal protection because supported by a rational basis); Adams v. Children'sMercy Hospital, supra ($350,000 statutory cap on non-economic damages for personal injury or death against a health care provider is rationally related to a legitimate state objective and does not deny equal protection of the laws); Robinson v. Charleston Area Medical Center,supra ($1,000,000 statutory cap on non-economic damages in medical malpractice cases does not violate equal protection clause); Etheridgev. Medical Center Hospitals, et al., supra; Fein v. Permanente MedicalGroup, 38 Cal.3rd 137, 211 Cal. Rptr. 368, 695 P.2d 665 (1985) app.dismissed 474 U.S. 892 (1985) ($250,000 statutory cap on non-economic damages for medical malpractice did not violate equal protection on grounds it impermissibly discriminated between medical malpractice victims and other tort victims); and Johnson v. St. Vincent Hospital,273 Ind. 374, 404 N.E.2d 585 (1980) ($500,000 cap on total recovery for medical malpractice injury not unreasonable or arbitrary and not violative of equal protection).
Even within the cases cited above, on both sides of the issue, the courts were commonly not unanimous in their rulings.
In Arkansas, an equal protection claim will be analyzed under the so-called "rational basis" standard. See Adams v. Arthur, 333 Ark. 53,969 S.W.2d 598 (1998). It has been stated that:
 In determining whether a classification denies the equal protection of the laws, we, as an appellate court, must determine if it has a rational basis and is reasonably related to the purpose of the statute; a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. The factors we look at to determine whether a law is violative of equal protection are: 1) the character of the classification, 2) the individual interests asserted in support of the classification, and 3) the governmental interests asserted in support of the classification.
Arnold v. Kemp, 306 Ark. 294, 303, 813 S.W.2d 770 (1991) (striking down on equal protection and other grounds, fee cap for payment to attorneys for indigent defense work because the untoward effects of the cap limitations fell unequally upon a select few lawyers).
I cannot predict with certainty whether the Arkansas Supreme Court would deem Section 13 of House Bill 1382, if enacted, contrary to the equal protection clauses of the Arkansas and United States Constitutions. The inquiry may focus on whether the legislation treats all similarly situated people alike. Obviously, able jurists from around the country disagree on a conclusion.
"Open Courts" or "Certain Remedy" Violation
Article 2, § 13 of the Arkansas Constitution provides that: "[e]very person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, comformably to the laws."
The courts of some states have held that this type of provision prohibits statutory damage caps on liability. See, Lucas v. United States,757 S.W.2d 687 (Tex. 1988) ($500,000 cap on non-medical treatment damages for medical malpractice violated "open courts" provisions of Texas Constitution); and Smith v. Department of Insurance, 507 So.2d 1080
(Fla. 1987) ($450,000 statutory cap on non-economic tort damages violates Florida constitutional provision stating that the courts "shall be open for redress of any injury, and justice shall be administered without sale, denial or delay").
A larger number of courts have rejected such an argument. See Verba v.Ghaphery, ___ S.E.2d ___ (W.Va. 2000) (2000 WL 1827349) ($1,000,000 statutory cap on non-economic damages in medical malpractice actions did not violate "open courts" provision of West Virginia Constitution, relying on Robinson v. Charleston Area Medical Center, supra ($1,000,000 statutory cap on non-economic damages in medical malpractice cases does not "certain remedy" provision; legislature may consider clear economic social conditions in deciding to alter common law)); Horizon/CMS HealthCare Corporation v. Auld, 34 S.W.3d 887 (2000) ($5000,000 cap on civil liability for damages for non-medical treatment damages did not violate "open courts" provision because survival action is purely statutory and not protected by "open courts" provision); Seminole Pipeline Company,Mapco v. Broad Leaf Partners, Inc., 979 S.W.2d 730 (Tex.Ct.App. 1998) (statutory cap on punitive damages affects only public punishment interests and does not infringe on plaintiff's right to "open courts");Scharrel v. Wal-Mart Stores, Inc., 21 Colo. Journal 651, 949 P.2d 89
(1997) ($250,000 to $500,000 cap on non-economic damages (up to judge) does not violate "open courts" provisions," relying on Scholz v.Metropolitan Pathologists, P.C., 851 P.2d 901 (Colo. 1993) ($250,000 statutory cap on non-economic damages against health care providers does not violate equal protection); Adams v. Children's Mercy Hospital, supra
($350,000 statutory cap on non-economic damages for personal injury or death against a health care provider does not impose a procedural bar to court access, but merely changes the common law to limit a cause of action and thus does not violate "open courts" provision); and Murphy v.Edmonds, supra ($350,000 statutory cap on non-economic damages in personal injury actions does not violate "certain remedy" provision because statute is reasonable and does not leave plaintiffs totally remediless).
It has been stated in Arkansas that this provision was adopted to prevent only "arbitrary or unreasonable legislative abrogation of a cause of action." White v. City of Newport, 326 Ark. 667, 933 S.W.2d 800 (1996) (enactment of municipal tort immunity statute not violative of art. 2, § 13) disagreeing with the analysis in Emberson v. Buffington,228 Ark. 120, 306 S.W.2d 326 (1957) (statute denying right of action to person related to owner or driver of automobile for injuries received while riding therein violates art. 2, § 13); and Riggs, Peabody Company v.Martin, 5 Ark. 506 (1843) (statute prohibiting probate actions unless the claimant makes an oath in open court that all payments and offsets have been credited the estate violates art. 2. § 13).
The analysis under art. 2, § 13 will therefore focus on the reasonableness of the proposed legislation. This will invariably involve the determination of facts, which is not possible in a formal Attorney General opinion. I thus cannot predict with certainty the outcome of a "certain remedy" challenge to House Bill 1382.
Special Legislation
Amendment 14 to the Arkansas Constitution provides that: "The General Assembly shall not pass any local or special act. This amendment shall not prohibit the repeal of local or special acts."
At least one state has held a statutory damage cap violative of the constitutional prohibition against "special legislation." See, Best v.Taylor Machine Works, 179 Ill.2d 367, 689 N.E.2d 1057 (1997) ($500,000 cap on non-economic damages in personal injury, death and injury to property cases impermissibly places entire burden of the anticipated cost savings on one class of injured plaintiffs and results in arbitrary classifications), relying on Wright v. Central Du Page Hospital Ass'n,63 Ill.2d 313, 347 N.E.2d 736 (1976) ($500,000 limit on compensatory damages in medical malpractice cases violated "special legislation" prohibition).
It appears that the courts of four states facing the issue have found the caps to survive a "special legislation" challenge, because rationally related to a legitimate state objective. See e.g., Verba v. Ghaphery,
___ S.E.2d ___ (W.Va. 2000) (2000 WL 1827349) ($1,000,000 statutory cap on non-economic damages in medical malpractice actions was not impermissible "special legislation," relying on Robinson v. Charleston Area MedicalCenter, supra ($1,000,000 statutory cap on non-economic damages in medical malpractice cases does not violate a number of constitutional provisions, including "special legislation" prohibition)); Kirkland v.Blaine County Medical Center, supra ($400,000 adjustable cap on non-economic damages for death or personal injury did not violate Idaho constitutional provision prohibiting "special legislation" because it was not arbitrary or capricious); Johnson v. St. Vincent Hospital, Inc.,supra; and Etheridge v. Medical Center Hospitals, et al., supra,reaffirmed in Pulliam v. Coastal Emergency Services, 257 Va. 1,509 S.E.2d 307 (1999).
An act is "special" in Arkansas if by some inherent limitation or classification it arbitrarily separates some person, place or thing from those upon which, but for such separation, it would operate. See Owen v.Dalton, 296 Ark. 351, 757 S.W.2d 921 (1988). In Arkansas the standard to be applied is the "rational basis test." McCutchen v. Huckabee,328 Ark. 202, 943 S.W.2d 225 (1997). That is, legislation will be upheld as against a "special legislation" challenge if it is "rationally related" to the purposes of the act. Id. Again, a determination of this issue will involve an analysis of facts, a task impossible in the limited format of an Attorney General's opinion. The inquiry will be whether the singling out of long-term care facilities for protection under the act is rational, in light of the purposes advanced by the legislature. The issue may also turn upon whether (as in Best v. Taylor Machine Works, supra), the legislation arbitrarily places the entire burden of satisfying the public interest on one class of victims — the most severely injured rather than proportionally reducing every jury verdict against long-term care facilities.
Due Process
Article 2, § 8 of the Arkansas Constitution states that ". . . nor [shall any person] be deprived of life, liberty, or property, without due process of law." See also United States Constitution, Amendment 14.
Statutory caps on non-economic or punitive damages have sometimes been challenged as a deprivation of property without due process of law. I have found no cases accepting this argument, but have found several rejecting it. See, e.g., Stewart v. Rice, 2000 WL 1228764 (Colo.App. 2000) ($250,000 cap on non-economic damages does not violate due process clause, relying on Scharrel v. Wal-Mart Stores, Inc., supra, and Scholzv. Metropolitan Pathologists, P.C., supra), Pulliam v. Coastal EmergencyServices, 257 Va. 1, 509 S.E.2d 307 (1999) ($1,000,000 cap on total recovery in action against health care provider does not effect a taking of property); Adams v. Children's Mercy Hospital, supra ($350,000 statutory cap on non-economic damages for personal injury or death against a health care provider does not deny due process, as plaintiff were afforded all process accorded in law); Robinson v. Charleston AreaMedical Center, supra ($1,000,000 statutory cap on non-economic damages in medical malpractice cases was reasonable and did not deny due process); Johnson v. St. Vincent Hospital, Inc., supra; and Etheridge v.Medical Center Hospitals, et al., supra.
Conclusion
In my opinion Section 13 of House Bill 1382, subsection (a)(3), in all likelihood violates art. 5, § 32 of the Arkansas Constitution and also violates the separation of powers doctrine. Several other potential avenues of constitutional challenge to this provision exist, but in light of my conclusion above, it is unnecessary to opine definitively upon their chances of success.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] I have restricted my constitutional analysis to this subsection of the bill. Although your written question is conceivably broad enough to cover any potential constitutional issue arising in any section thereof, it is my understanding that the focus of your question is on the liability caps in Section 13, (a)(3). I do not address herein any potential unconstitutionality of Section 3(b), regarding the accrual of causes of action, or Section 13 (a)(1), which purports to abolish any cause of action against a long-term care facility for other than a "medical injury," or Section 13 (c), which appears by negative implication to apply the provisions of the bill regarding non-economic damages to actions pending at the time of passage of the bill.
[2] The Medical Malpractice Act, among other things, contains a two-year statute of limitation for such actions. A.C.A. § 16-114-203
(Supp. 1999).
[3] Underlined language denotes new additions to the statutory language, stricken language denotes deletions and italicized language denotes an amendment of the bill.
[4] I have found only four other states with similar constitutional provisions. See Pennsylvania Constitution, Article III, Section 18; Kentucky Constitution, Section 54; Arizona Constitution, art. II, § 31 and art. XVIII, § 6; and Ohio Constitution, art 1, § 19a (as to wrongful death only). See also, Griffin v. Southeastern PennsylvaniaTransportation Authority, 757 A.2d 448 (Pa. 2000) (statutory cap on damages against a Commonwealth party did not violate art. III, § 18 of Pennsylvania Constitution, because Pennsylvania Constitution also empowered General Assembly to restrict suits against the Commonwealth); and Fann v. McGuffey, 534 S.W.2d 770 (Ky. 1975) (no-fault automobile insurance law which requires certain actual damage threshold or injury before an award of non-economic damages may be made did not violate Section 54 of Kentucky Constitution because law provided for impliedconsent of drivers to such provisions, absent a filed rejection of its provisions).
[5] An attempt was made in 1976 to amend this provision further to authorize the General Assembly to limit and regulate the damages paid to persons injured by "hospitals, nursing homes, certified registered nurse anesthetists, and by practitioners of the healing arts. . . ." The proposed constitutional amendment was prohibited from being placed on the ballot for technical noncompliance with the provisions of art. 19, § 22.See Jernigan v. Niblock, 260 Ark. 406, 540 S.W.2d 593 (1976).
[6] It is my opinion that "non-economic" damages, including damages for "pain and suffering," at least when accompanied by a physical or bodily injury, are "amount[s] to be recovered" for death or for injuries to persons. See, Peay v. Western Union Telegraph Company, 64 Ark. 538 (1898) ("[i]t is not to be controverted that in cases of tort that produce physical injury, attended with mental suffering, the mental suffering is an element of damages recoverable in an action at law, because they are so intimately connected as to make separation impracticable"). See alsoCoca-Cola Bottling Company of Arkansas v. Adcox, 189 Ark. 610,74 S.W.2d 771 (1934) ("measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as is susceptible of estimate in money, as will compensate plaintiff for all losses . . . which he has sustained by reason of the injury, including compensation for his pain and suffering. . . . Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement, from which it follows that in this class of cases the amount of the award rests largely within the discretion of the jury . . ."), citing 17 Corpus Juris 869. See also generally, Beaupre v.Boulevard Billiard Club, 510 A.2d 415 (R.I. 1986) (wrongful death, as well as the pain and suffering associated with fatal injury constitute "injury to the person"). See also, absent any bodily injury, Rivera v.Double A Transportation, Inc., 248 Conn. 21, 727 A.2d 204 (1999) (mental suffering, even if unaccompanied by physical trauma to the body constitutes an "injury to the person" under two-year statute of limitations); Carney v. Smith, 222 Tenn. 472, 437 S.W.2d 246 (1969) (allegations of great mental pain and anguish arising from desecration of ancestor's burial plots brought action for "injuries to the person"); andKoch v. Segler, 331 S.W.2d 126 (Mo. 1960) (malicious prosecution judgment was based on willful and malicious "injury to the person" for bankruptcy discharge purposes even though items of damages included defense expenses and mental anxiety and suffering). But cf. Tilmon v. Perkins,292 Ark. 553, 731 S.W.2d 212 (1987) ("personal injury," as used in venue statute, which refers to the place where the "accident" occurred, refers to physical or bodily injuries), citing Robinson v. Missouri PacificTransportation Co., 218 Ark. 390, 236 S.W.2d 575 (1951); and SouthwesternBell Tel. Co. v. Wilkes, 269 Ark. 399, 601 S.W.2d 855 (1980) (art. 5, § 32 has no application to damages to business interests).
[7] It is sometimes held, in order to invoke such a provision, that the cause of action affected by the statute must have become established prior to the adoption of the Constitution. See Brothers v. Dierks Lumber Coal Co., 217 Ark. 632, 641, 232 S.W.2d 646 (1950) ("[b]efore there can be a law limiting recoveries for injury or death, there would have to be some existent right to recover for such wrongs"); and McCollum v.Sisters of Charity of Nazareth Health Corporation, 799 S.W.2d 15 (Ky. 1990). It appears that medical injury actions satisfy this criterion in Arkansas. See Weidrick v. Arnold, 310 Ark. 138, 835 S.W.2d 843 (1992) (actions for medical malpractice did not originate as a right, remedy, or proceeding created legislatively, but "are rooted in the Anglo-American common law" and the action is "almost as old as personal injury actions"), citing Prosser, Law of Torts, 32, p. 161.
[8] Despite the court's analysis, it is not clear that a common law right of action to recover against municipalities in tort existed at the time of adoption of the Arkansas Constitution. See, Hardin v. City ofDeValls Bluff, 256 Ark. 480, 508 S.W.2d 559 (1974).
[9] See also, more recently Kroger Co. v. Standard, 283 Ark. 44,670 S.W.2d 803 (1984) (where defendant moves for remittitur, and it is granted and judgment entered for the residue, defendant is not barred from appealing).