Dickie SPEARS *v.* STATE of Arkansas

CR 80-88                                 605 S.W. 2d 9

Supreme Court of Arkansas
Opinion delivered September 22, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Ray Hartenstein*, Chief Deputy Defender, Little Rock, for appellant.

*Steve Clark*, Atty. Gen., by: *Joseph H. Purvis*, Deputy Atty. Gen., Little Rock, for appellee.

JOHN F. STROUD, Justice. Appellant was convicted by a jury of two counts of burglary and three counts of theft of property He was sentenced to three years' imprisonment on both burglary charges and two years on two of the theft convictions. No time was given on the third theft conviction, but appellant was fined $500. Finding no error in the denial of appellant's motion to suppress the evidence, we affirm the conviction.

The stolen property consisted of jewelry and jewelry boxes taken from a residence, binoculars and six guns taken from a place other than an occupiable structure. All of the crimes were alleged to have been committed by appellant and two companions on the 30th and 31st of May, 1979.

While still at the scene of the burglary and theft of the guns, the Sheriff of Washington County received a call that some boys had just been seen unloading guns at a house just off Parsons Road. The sheriff and other officers went to the house described in the tip and saw a car stop there and three boys exit. The three were separated and questioned. One of appellant's codefendants broke down and said the guns were in the house in the first bedroom on the right. The boys were placed under arrest just as Mary Martin approached the officers from her home next door. Based on the verbal and written consent of Mrs. Martin, who claimed to be the overseer of the house for her son, the house was searched and the stolen property recovered.

Appellant filed a pretrial motion to suppress the evidence seized without a warrant from the house near Springdale, Arkansas, owned by A. E. Morgan, in which appellant claimed to be living with Lisa Morgan, the owner's daughter. The State sought to justify the warrantless search upon the ground that consent to search was given the investigating officers by Morgan's mother, Mrs. Martin, who told them she was looking after the house in her son's absence, while appellant claimed Mrs. Martin lacked the requisite authority to consent to such a search. After hearing the testimony at the pretrial hearing, the trial court denied appellant's motion. Following trial and conviction on all charges on August 23, 1979, with the sentences to run concurrently, appellant brings this appeal alleging as the sole error that the trial court erred in denying his motion to suppress the stolen property from introduction into evidence.

The only issue for consideration on this appeal is whether the search of A. E. Morgan's house was constitutionally permissible. The trial court sustained the search on two grounds — that appellant, having no proprietary or possessory interest in the premises, lacked standing to question the validity of the search, and that the search was based upon the voluntary consent of a person with apparent authority over the premises. As we agree with the trial court that the search was properly based on the voluntary consent of one with apparent authority or control over the premises, we need not address the question of standing.

In *Schneckloth* v. *Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), it was again recognized that the search of property, absent a warrant and probable cause, but with proper consent voluntarily given, is valid under the Fourth Amendment to the United States Constitution. In the present case, we must determine the validity of the consent to search given by a third party rather than the defendant, when both are in some degree of control over the premises sought to be searched. In addressing this question, the United States Supreme Court, in *United States* v. *Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), stated:

. . . When the prosecution seeks to justify a warrantless

search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be searched.

This court has also recognized on numerous occasions that a warrantless search is nonetheless valid where voluntary consent has been given by a third party with sufficient control or authority over the premises. *Grant* v. *State*, 267 Ark. 50, 589 S.W. 2d 11 (1979); *King* v. *State*, 262 Ark. 342, 557 S.W. 2d 386 (1977); *Asher & Bradford* v. *City of Little Rock*, 248 Ark. 96, 449 S.W. 2d 933 (1970). Furthermore, under Rule 11-.2(c), Arkansas Rules of Criminal Procedure, consent to a search of premises may be given by a person who, by ownership or otherwise, is apparently entitled to give or withhold consent. We noted in *Grant*, supra, that although Rule 11.2 does not, standing alone, govern admissibility of things seized during the search, the apperance of authority to give consent and the good faith of the officers are significant factors in determining the validity of the consent to search.

The testimony of Mrs. Martin at the pretrial hearing substantially corroborated the testimony of the officers. It is also pertinent that prior to the search, one of the officers made two trips into the living room of the house at the request of appellants to look for his cigarettes. Finding the living room unfurnished and finding that the electricity was turned off to the house gave credence to the representatives of Mrs. Martin of the minimal occupancy of the house by her minor granddaughter.

The investigating officers at the pretrial hearing related the information relied upon by them in determining that Mary Martin was entitled to give consent to the search. They testified she told them the house belonged to her son, who hads moved away, and that "she was taking care of it and was the overseer." When asked if she would consent to a search, she replied, "Yes you can. No one lives in there." Further, they stated she told them "if anything stolen is in the house, I want it out." In light of the totality of the circumstances, it

was not unreasonable for the officers to believe Mrs. Martin was vested with sufficient control over the premises, and in fact she did possess sufficient authority over the premises, to give a valid consent to a search without the issuance of a search warrant.

Affirmed.