Joe BURT *v.* ARKANSAS LIVESTOCK AND POULTRY COMMISSION

82-185                                                    644 S.W.2d 587

Supreme Court of Arkansas
Opinion delivered January 24, 1983

*Walters, Davis & Cox, P.A.,* for appellant.

*Steve Clark,* Atty. Gen. by: *Roger W. Giles,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. The chancellor issued a mandatory injunction which required appellant to assemble his cattle for the purpose of testing for brucellosis by the Arkansas State Livestock and Poultry Commission. The injunction was stayed pending this appeal.

On appeal appellant contends the statutes and regulations involved herein are unconstitutional inasmuch as they deny him due process and equal protection of the law. We hold that the statutes and regulations do not deny appellant due process or equal protection either on their face or as applied in the case now before us.

The facts of this case disclose that the Arkansas Livestock and Poultry Commission determined that some cattle in Franklin County had contracted brucellosis. Therefore, the commission declared Franklin County to be an area test county. Pursuant to that order appellant was ordered to assemble his cattle for testing on a specific date. He refused to assemble his two herds claiming that the commission was acting in an unconstitutional manner. Appellant's herds are the only ones in the county which have not been inspected.

The appellant argues the statutes and regulations are violative of due process by failing to provide for a hearing on the matter of declaring a county to be a test area and in that the decision to test lies solely with the commission. One result of a positive test is that the animal is branded and ordered disposed of immediately. Diseased animals are usually sold at nearby auction barns. Such cattle are safe for human consumption. The owner receives the sale price and also is paid a certain sum by the United States Department of Agriculture. It is urged that a minimum requirement of due process requires reasonable notice and an opportunity to be heard. We agree with this argument. Public hearings were held on the statutes prior to their enactment and implementation. Admittedly, no notice was given nor were local hearings held in Franklin County before the commission employees commenced testing cattle.

Ark. Stat. Ann. § 78-434 (Repl. 1981) provides:

(a) Whenever the Livestock Sanitary Board [Arkansas Livestock and Poultry Commission] shall declare a county in this State to be a Brucellosis control area, the Board [Commission] shall proceed to conduct such tests and enforce such reasonable rules and regulations as may be necessary to qualify said county for certification or re-certification as a Modified Certified Brucellosis free county as outlined in the uniform rules and regulations of the United States Department of Agriculture. A county may be certified as a Brucellosis free area when not more than one per cent (1%) of cattle and

not more than five per cent (5%) of cattle herds are positive to the official agglutination test.

(b) Whenever seventy-five per cent (75%) or more of the counties of this State have been certified by the Livestock Sanitary Board [Arkansas Livestock and Poultry Commission] as Brucellosis free areas, all other counties not so certified shall automatically become Brucellosis control areas.

Ark. Stat. Ann. § 78-435 (Repl. 1981) states:

In order to carry into effect the provisions of this act [§§ 78-433 — 78-435], the Livestock Sanitary Board [Arkansas Livestock and Poultry Commission] may make such rules and regulations and require such reports and records as may be necessary.

We have upheld the testing of cattle by the state in the case of *State, Ex Rel. Hale, Prosecuting Attorney* v. *Lawson,* 212 Ark. 233, 205 S.W.2d 204 (1947). The language in *Lawson* dealt with what was then called "Bangs disease" which is now referred to as brucellosis. Whichever name is applied is of no moment as cattle sometimes transmit the disease to humans in a form known as undulant fever. Certainly, as we held in *Lawson,* the state may exercise its powers to safeguard the health, safety and welfare of its citizens. There we stated:

We find and hold that the regulation that reactors be segregated and be so branded as to indicate that they were found to be reactors is not an unreasonable or arbitrary rule.

. . .

Upon the whole case we conclude that the regulations of the State Board of Health are reasonable and a valid exercise of the state's police power, and that a proper method to enforce them is to prevent the sale of milk produced in their violation.

If any individual owner is to be allowed the right to refuse to allow his cattle to be inspected and/or vaccinated then our laws and regulations may as well never have been enacted. The only manner by which the disease may be eradicated is by such enactments.

The Texas Court of Appeals considered the same question in the case of *Nunley* v. *Texas Animal Health Commission*, 471 S.W.2d 144 (Tex. Civ. App. 1971). The owner in *Nunley* argued that the Texas brucellosis program (very similar to the Arkansas program) amounted to a taking of property without just compensation. He had been ordered to pen his cattle for testing and if any were found to have the disease they must be sold for slaughter or otherwise destroyed within 15 days. Nunley argued the cost of penning the cattle and the danger of injury were property rights which would not be compensated for under the plan. In holding the Texas statutes and regulations valid the court stated:

> It is well settled that neither a natural person nor a corporation can claim damages on account of being compelled to render obedience to a police regulation designed to secure the common welfare [citing] *Chicago, B. & O. R. Co.* v. *Chicago,* 166 U.S. 226 (1897).

The Texas Court of Appeals further stated:

> If the brucellosis control program is otherwise valid as an exercise of the police power, the fact that it deprives the property of its most beneficial use does not render it unconstitutional.

When the health and welfare of the public is involved, individual rights must yield to the superior rights of the public, even if it means the reduction in value of property. *Hadacheck* v. *Sebastian,* 239 U.S. 394 (1915). If any of appellant's cattle are found diseased, he will receive the regular slaughter price plus a scheduled amount from the Department of Agriculture. There does not appear to have been a taking of property other than the cost of rounding up the herds and possible injury of some cattle. Employees of

the commission have offered to assist in herding and separating the cattle. Even if there is a reduction in value caused by the taking of property pursuant to the exercise of valid police powers, there is no absolute right to indemnity for such reduction in value. *Hadacheck* v. *Sebastian*, supra.

The appellant argues he has not been afforded equal protection of the laws. Apparently this argument is bottomed on the indemnity schedule established by the United States Department of Agriculture pursuant to 21 U.S.C.A. 114 (a). The schedule provides for payment to the owner for cattle he has disposed of because of brucellosis as follows: $50 per head for non-registered beef cattle; $250 for registered cattle; $150 for non-registered dairy cows; and $25 for heifer calves nursing reactor cows.

There is no disagreement that all citizens are to be treated equally but there is nowhere any guarantee that all people will be equally situated in place and property. We also agree that the state cannot create different classifications on the basis of criteria wholly unrelated to the purpose for which the classification is established. The classification must not be arbitrary and must have a fair and substantial relationship to the purposes requiring such classification. We were presented the question of equal protection in the case of *Corbitt* v. *Mohawk Rubber Co.*, 256 Ark. 932, 511 S.W.2d 184 (1974), and we quoted with approval from another case that a classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. Thus treating all beef cattle owners alike is valid even though they are not treated the same as all dairy cattle owners. Dairy and beef herds are clearly kept for different purposes. This distinction is properly within the bounds of the equal protection provisions of the United States and Arkansas Constitutions.

The purpose of the rules and regulations here under consideration is to prevent and eradicate, if possible, the disease of brucellosis in cattle and thereby prevent the contagious disease of undulant fever in people. There could

hardly be a more suitable case for exercise of the state's police powers. Therefore, the remaining question to be resolved is whether the classification meets the above-stated test. We think it clearly meets the criteria necessary to prevent unequal protection of the laws. All cattle in Franklin County are included in the order for testing. There is no way in which the classification could be made more broad. The objection relating to the price the agriculture department pays for infected animals is almost as broad inasmuch as all cattle owners in the test area are treated exactly alike. Appellant has not shown he will incur any loss at all, but in any event he has clearly not demonstrated that his classification is different or more burdensome than that of any other cattle owner in the test area.

We hold that the statutes and the regulations considered herein are constitutional as applied to the facts of this case. Therefore, appellant is bound under the law to assemble his cattle for testing as directed.