Tina WINTERS *v.* STATE of Arkansas

CR 89-156                    782 S.W.2d 566

Supreme Court of Arkansas
Opinion delivered January 16, 1990

*Lesly W. Mattingly*, for appellant.

*Steve Clark*, Att'y Gen., by: *Clint Miller*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. This appeal from a criminal conviction questions whether the trial court correctly denied a motion to suppress evidence, and challenges the constitutionality of the statutes under which the appellant was convicted.

Appellant, Tina Winters, is the owner of Miss Buckando, a registered quarter horse acquired in 1975. On April 5, 1987, appellant separated from her husband, Gene Winters, and returned to her home in McRae, Arkansas, while Winters remained at his farm in Cabot. Appellant left her horses at Cabot with the understanding that she would remove them as soon as possible.

On April 24, 1987, without appellant's knowledge, Gene Winters took Miss Buckando, along with some of his own horses, to a veterinarian for testing for equine infectious anemia (EIA). See Ark. Code Ann. §§ 2-40-801—805 (1987). Under our code, if a horse tests positive, it must be branded and quarantined[1] or sold for slaughter. When a voluntary test is given the state requires

---

[1] The animal must be isolated from other horses a distance of at least 200 yards.

that a consent form be signed by the owner or the owner's agent. Winters signed the consent for his horses as well as for appellant's horse. The test was administered by Dr. Mann, who had previously furnished veterinary services to both parties. After obtaining the consent form from Gene Winters, Dr. Mann drew blood on all the horses and sent the samples to the Arkansas Livestock and Poultry Commission for testing. The test on appellant's horse was positive. When she was contacted by an ALPC agent about compliance with the state regulations for a "reactor" animal, appellant refused to have the horse branded and quarantined.

Under Ark. Code Ann. § 2-40-802 (1987), a failure or refusal to comply with the EIA provisions under the code is a misdemeanor. Appellant was tried in Searcy Municipal Court and found guilty. She appealed to the Circuit Court of White County and moved to suppress evidence of the test results and challenged the constitutionality of the statutes under which she was being charged. The motions were denied and after a trial on the merits, appellant was again found guilty for refusing to brand a reactor horse and fined $750. From that decision, appellant brings this appeal.

Appellant first argues that the trial court erred in denying appellant's motion to suppress the EIA test results. Appellant's argument is based entirely on agency theories, contending that Gene Winters had no authority as her agent to consent to the test.

There are inherent flaws in appellant's argument. First, the exclusionary rule is not applicable to this case because the actions complained of were not taken by the state, but by private individuals. Second, even if we were to reach the consent question, a consent to a Fourth Amendment search is not judged by traditional rules of agency, but by case law developed in criminal law on consent as that law relates to searches.[2]

For a search to be implicated under our Criminal Code,

---

[2] Although there are similarities, there are differences; suffice it to say that a different body of law applies to questions of consent with agency theories and Fourth Amendment searches. *See* A.R.Cr.P. 11.2; *See also, Spears* v. *State*, 270 Ark. 331, 605 S.W.2d 9 (1980); *United States* v. *Butler*, 495 F. Supp. 579 (E.D. Ark. 1980); *Grant* v. *State*, 267 Ark. 50, 589 S.W.2d 11 (1979).

the search must constitute an "official intrusion." *See* A.R.Cr.P. 10.1(a) and Commentary to Article IV. "The search and seizure clauses are restraints upon the government and its agents, not upon private individuals." *Walker* v. *State*, 244 Ark. 1150, 429 S.W.2d 121 (1968). The general corollary to this proposition is that the exclusionary rule is not intended as a restraint upon the acts of private individuals. Such searches will not implicate the Fourth Amendment unless the search by the private party has been done at the request or direction of the government, or in some way has been a joint endeavor with the government. *Houston* v. *State*, 299 Ark. 7, 771 S.W.2d 16 (1989), citing to 1 LaFave, *Criminal Procedure* § 3.1(h) (1984). Where a state official has no connection with a wrongful seizure, there is no basis for exclusion. *Id.*

Here the search was undertaken pursuant to a request from appellant's estranged husband and the blood was drawn by a private veterinarian. There is no contention by appellant that these two private individuals were in any way acting under the government's direction or in a joint endeavor with state agents. The trial court was correct to deny the motion to suppress.

Secondly, appellant submits the trial court erred in upholding the constitutionality of EIA regulatory statutes, Ark. Code Ann. §§ 2-40-801—805 (1987). The argument suggests two grounds for a constitutional challenge—lack of substantive due process and a taking without just compensation under the Fifth Amendment.

Under substantive due process, the legislation must be rationally related to achieving a legitimate governmental objective. *See, McClelland* v. *Paris Public Schools*, 294 Ark. 292, 742 S.W.2d 907 (1988); *McCammon* v. *Boyer*, 285 Ark. 288, 686 S.W.2d 421 (1985). Appellant does not contend the state goal is not a legitimate one, but rather that the regulations are not rationally related to achieving those ends. Specifically appellant points out that of those horses testing positive, 80 to 95% will never transmit the virus, so that of 25,000 horses tested annually, only 60 to 170 horses would transmit the virus; that there has been no decrease in transmitters since the development of this test for EIA; and that five other states have abandoned this test. We take the argument to be that the methods incorporated in the statutes

are so inefficient that there is no rational relationship to the state goal of eradicating or controlling the disease.

■ We responded to a similar argument in *McClelland, supra*, that the appellant in that case had misconstrued the test when she argued that the regulation was not accomplishing any of its goals. The same is true here. The test is whether there is a conceivable basis for the rule, so that it can be said the action was not arbitrary. "The Constitution is not violated so long as a law is not premised upon a patently irrational basis. Judicial inquiry does not concern itself with the accuracy of the legislative finding, but only with the question of whether it so lacks any reasonable basis as to be arbitrary." *McClelland, supra*, citing from *Cook County College Teachers Union* v. *Taylor*, 432 F. Supp. 270 (1977).

■ The burden of establishing this result is on the appellant, *McClelland, supra*, and here appellant has not made such a showing. Rather, she relies on evidence which, while indicating some inefficiency in the test, nevertheless is premised on the fact that the regulations are related to the state's goals, and nothing appellant has presented suggests a "patently irrational basis." Furthermore, there was other testimony from the same expert cited for appellant's arguments, which explained away most of appellant's objections to the program, and provided more than an adequate basis for sustaining the regulations. As stated in *Bolling* v. *Texas Animal Health Commission*, 718 S.W.2d 819 (Tex. App. 1986), which considered the constitutionality of brucellosis regulations, "The mere fact that a certain regulation is not the best possible regulation, or that the regulation can be improved, is not justification to invalidate the regulation."

Appellant next argues that under the Fifth Amendment to the United States Constitution and art. 2 § 22 of the Arkansas Constitution, she cannot be deprived of her property without just compensation. She testified that her horse was worth $1,000 and that because she did not have enough acreage for the required quarantine area (a minimum of forty acres) she would have to have the horse slaughtered for which she would receive about $200. This, she insists, amounts to a taking and should therefore be compensated.

■ It has already been settled in Arkansas that a police

power regulation for the health and welfare of the state which requires destruction of contaminated animals is not a taking, if the regulation is an otherwise valid exercise of the police power and if there is some residual value to the owner. *Burt* v. *Arkansas Livestock & Poultry Comm'n*, 278 Ark. 236, 644 S.W.2d 587 (1983).

Here, as already noted, the regulation is a valid exercise of the police power and there has been no total diminution of the value of appellant's horse, but only a reduction in its value. And while there is no set formula to determine where regulation ends and taking begins, *J.W. Black Lumber Co.* v. *Ark. Dept. of Pollution Control & Ecology*, 290 Ark. 170, 717 S.W.2d 807 (1986), when comparing this to similar cases, we conclude the reduction in value does not equate to a taking. See *Bolling* v. *Texas Animal Health Comm'n, supra; Numley* v. *Texas Animal Health Comm'n*, 471 S.W.2d 144 (Tex. Civ. App. 1971). *And see also* 2 J. Sackman, Nichols on Eminent Domain, § 6.07 (1985).

Finally, appellant objects to the trial court's admission of the state's test results because there was insufficient authentication of those results. Appellant makes two points under this argument. The first is that the vet testified he drew the blood on April 24, but that the test form he completed for the lab was dated April 25th. Appellant objected to the introduction of the test form bearing the state's results, because of this discrepancy, but the objection was overruled.

In the trial court's finding of facts it made a finding on this point, noting that the vet had testified that he would regularly complete the document sometime after he drew the blood sample. And this finding is supported by the record. The vet's records further showed that he had only drawn blood for Mr. Winters in April of 1987 on the 4th, 14th and the 24th.

The trial judge determines whether the evidence is admissible and on review, the appellate court will reverse the decision only if there is an abuse of discretion. *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987); A.R.E. Rule 104(a). Given the facts in the record, there was more than an adequate basis for the court's admission of the test results, as the discrepancy in the dates was easily and logically explained.

The appellant's second point essentially contends that at some point the blood samples had been sufficiently separated from any identifying papers or labels on the samples themselves, so that there was insufficient authentication to show that the positive tests results belonged to the horse in question. However, there was no objection on this basis below. Appellant's objection before the trial court reached only the discrepancy in the dates. Failure to make a specific argument below waives any argument on appeal. A.R.E. Rule 103(a)(1); *Bonds* v. *State*, 296 Ark. 1, 751 S.W.2d 339 (1988).

AFFIRMED.