The Honorable Mike Hathorn State Representative Rt. 2, Box 409 Huntsville, AR 72740
Dear Representative Hathorn:
You have requested my opinion concerning the currently-pending House Bill 1213, which affects the nursing home industry. You have presented the following questions concerning the bill:
 (1) Does the provision allowing for the opt-out of certain facilities violate the 14th Amendment to the U.S. Constitution or Article II, § 3 of the Arkansas Constitution (equal protection)?
 (2) Does the opt-out provision violate the 1st Amendment to the U.S. Constitution or Article II, § 24 of the Arkansas Constitution (the religion clauses)?
 (3) Does the limitation on punitive damage awards violate Article V, § 32 of the Arkansas Constitution (prohibiting limitation on recovery in certain contexts); Article IV of the Arkansas Constitution (separation of powers); Article II, § 7 of the Arkansas Constitution (right to jury trial); Article II, § 3 of the Arkansas Constitution or the 14th
Amendment to the U.S. Constitution (equal protection); Article II, § 13
of the Arkansas Constitution (open courts/certain remedies); or Article II, § 8 of the Arkansas Constitution or the 14th Amendment to the U.S. Constitution (due process)?
 (4) Are the changes that this bill would bring about in pleading and evidence requirements superseded by the Arkansas Rules of Civil Procedure and the Arkansas Rules of Evidence?
 (5) Does the statute of limitations provision of the bill violate Article V, § 32 of the Arkansas Constitution (prohibiting limitation on recovery in certain contexts); Article II, § 3 of the Arkansas Constitution or the 14th Amendment to the U.S. Constitution (equal protection); Article II, § 13 of the Arkansas Constitution (open courts/certain remedies); or Article II, § 8 of the Arkansas Constitution or the 14th Amendment to the U.S. Constitution (due process)?
RESPONSE
As an initial matter, I must note that you have raised a variety of questions about the constitutionality of HB 1213 under a number of constitutional principles. It is important to remember that legislation is entitled to a presumption of constitutionality, and if the courts can interpret legislation so as to uphold its constitutionality, they will do so. Barclay v. First Paris Holding Co., 344 Ark. 711, 42 S.W.3d 496
(2001). Moreover, the burden of proof is on the party challenging the legislation to prove its unconstitutionality, and all doubts will be resolved in favor of the statute's constitutionality, if it is possible to do so. An act will be struck down only if there is a clear incompatibility between the act and the constitution. City of CaveSprings v. City of Rogers, 343 Ark. 652, 37 S.W.3d 607 (2001).
With these principles in mind, I will proceed to address your questions. Before giving a full discussion of the issues, I will summarize the conclusions I have reached:
 1) The opt-out provision of HB 1213 does not violate the equal protection clauses of either the U.S. Constitution or the Arkansas Constitution.
 2) The opt-out provision does not violate the religion clauses of either constitution.
 3) The limitation in HB1213 of punitive damages raises serious constitutional questions under the Arkansas Constitution's prohibition of limitations on recovery for injuries.
 4) The limitation of punitive damages raises serious constitutional questions under the separation of powers principle of the Arkansas Constitution.
 5) It is unclear whether the limitation of punitive damages violates the right to a jury trial under the Arkansas Constitution.
 6) The limitation of punitive damages does not violate equal protection.
 7) The limitation of punitive damages does not violate the" open courts/certain remedies" requirement of the Arkansas Constitution.
 8) The limitation of punitive damages does not violate the due process clauses of either the U.S. Constitution or the Arkansas Constitution.
 9) It is a question of fact whether HB 1213's requirements for pleading and evidence would be superseded by any court rule. Amendment 80 may apply.
 10) HB 1213's statute of limitations does not violate the Arkansas Constitution's prohibition of limitations on recovery for injuries.
 11) The statute of limitations does not violate equal protection or due process.
 12) HB 1213's statute of limitations does not violate the" open courts/certain remedies" requirement of the Arkansas Constitution.
Having summarized my conclusions, I will now proceed to discuss the issues raised by each of your questions.
Question 1 — Does the provision allowing for the opt-out of certainfacilities violate the 14th Amendment to the U.S. Constitution orArticle II, § 3 of the Arkansas Constitution (equal protection)?
It is my opinion that the opt-out provision of House Bill 1213 does not, on its face, violate the equal protection principles of either the U.S. or the Arkansas Constitution.
The opt-out provision of HB 1213 permits skilled nursing facilities to opt out of participation in a required "patient's recovery fund," if they establish that they are "nonprofit, government or church affiliated" organizations. The provision thus creates a classification that treats such organizations differently than other, private organizations.
The equal protection doctrines of both the Arkansas and the U.S. Constitutions prohibit certain types of "classifications." A classification is the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrines. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class or a fundamental right, it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis-no rational relation to a legitimate end. Vacco v. Quill,521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620, 631 (1996); Clements v.Fashing, 457 U.S. 957 (1982); Seagrave V. Price, 349 Ark. 433,79 S.W.3d 339 (2002); Craft v. City of Fort Smith, 335 Ark. 417,984 S.W.2d 22 (1998).
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification, but they must also uphold the classification even without requiring a showing of an actual rational basis, if any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Eady v. Lansford, 02-695 (Ark. 12-12-2002); Ester v. National Home Ctrs., Inc., 335 Ark. 356,981 S.W.2d 91(1998); Reed v. Glover, 319 Ark. 16, 889 S.W.2d 729 (1994);Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1,852 S.W.2d 122 (1993); Arkansas Hospital Assoc. v. State Board of Pharmacy,297 Ark. 454, 763 S.W.2d 73 (1989).
It is my opinion that the classification that is created by the opt-out provision of HB 1213 is not one that affects any suspect class or fundamental right. It must therefore be evaluated under the rational basis standard. In my view, it is possible to adduce a rational basis for the classification that is created by the opt-out provision. The drafters may have reasoned that nonprofit, government, and church-affiliated organizations should be excused from participation in the fund due to the elevated level of scrutiny they receive by either internal or regulatory sources, and that this heightened scrutiny, combined with these organizations' limited resources, justifies permitting them not to participate in the fund. It is my opinion that because a rational basis for the classification can be thus conceived for the opt-out provision of HB 1213, it does not violate equal protection principles.
Question 2 — Does the opt-out provision violate the 1st Amendment tothe U.S. Constitution or Article II, § 24 of the Arkansas Constitution(the religion clauses)?
It is my opinion that the opt-out provision of HB 1213 does not violate the religion clauses of either the U.S. or the Arkansas Constitutions.
Presumably, a challenge to the opt-out provision of HB 1213 on religious grounds would arise out of the "establishment" components of the religion clauses of the U.S. and Arkansas Constitutions. That is, such a challenge would presumably be based upon the argument that by permitting religious organizations to opt out of participation in the fund, HB 1213 grants a special favor or privilege to religion. It is my opinion that such a challenge would fail.
The U.S. Supreme Court has upheld special exemptions that are extended to religious organizations in instances where the special exemption is also extended to non-religious organizations. For example, in Walz v. TaxComm'n of New York City, 397 U.S. 664 (1970), the Court upheld a property tax exemption that applied to religious organizations. The exemption was challenged on "Establishment Clause" grounds. The Court rejected the challenged on the grounds that the exemption was available to a wide range of organizations, and not just to religious organizations. In contrast, the Court struck down an exemption that was available only to religious organizations Texas Monthly, Inc. v. Bullock, 489 U.S. 1
(1989).
It is my opinion that because the opt-out provision of HB 1213 is extended to both religious and non-religious organizations, it does not violate the establishment clauses of either the Arkansas or U.S. Constitution.
Question 3 — Does the limitation on punitive damage awards violateArticle V, § 32 of the Arkansas Constitution (prohibiting limitation onrecovery in certain contexts); Article IV of the Arkansas Constitution(separation of powers); Article II, § 7 of the Arkansas Constitution(right to jury trial); Article II, § 3 of the Arkansas Constitution orthe 14th Amendment to the U.S. Constitution (equal protection); ArticleII, § 13 of the Arkansas Constitution (open courts/certain remedies); orArticle II, § 8 of the Arkansas Constitution or the 14th Amendment tothe U.S. Constitution (due process)?
Most of the constitutional issues you have raised in this question were addressed and analyzed thoroughly by my predecessor in Attorney General Opinion No. 2001-058, in the context of evaluating the constitutionality of another proposed limitation on damage awards. I will not reiterate that analysis, but rather, will summarize the points that support my conclusions. I will address each constitutional argument separately.
Article V, § 32 (Limitations on Recovery)
It is my opinion that the punitive damages limitation of HB 1213 raises serious constitutional questions under Article V, § 32 of the Arkansas Constitution.
Article V, § 32 of the Arkansas Constitution states:
 The General Assembly shall have power to enact laws prescribing the amount of compensation to be paid by employers for injuries to or death of employees, and to whom said payment shall be made. It shall have power to provide the means, methods, and forum for adjudicating claims arising under said laws, and for securing payment of same. Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted. [As amended by Const. Amend. 26.]
Ark. Const., Art. V, § 32.
As an initial matter, I must note that an argument could be made that Article V, § 32 does not apply to limitations on punitive damages. The argument would be that punitive damages are not damages "recovered for injuries," since punitive damages are based upon the defendant's conduct rather than on the injury suffered by the plaintiff. My predecessor acknowledged the possibility of this distinction in Attorney General Opinion No. 2001-058, but concluded that because plaintiffs are permitted by law to recover punitive damages as a result of injury, any limitation on the recovery of such damages raises serious constitutional questions under Article V, § 32. Id. at 2, citing Brill, Punitive Damages inArkansas — Expanded? Restricted?, 1990 ARK. L. NOTES 25. I agree with that analysis. In my view, an interpretation of Article V, § 32 under which its provisions were understood not to apply to legislative attempts to limit punitive damages would be strained and contrary to the purpose of the provision. For this reason, I interpret Article V, § 32 to raise serious questions about limitations on punitive damages.
Accordingly, HB 1213 is, in my view, impacted by Article V, § 32. The pertinent limitation language of HB 1213 (which would be codified at A.C.A. § 20-10-1923) states:
 An award of punitive damages against a skilled nursing facility shall not exceed the lesser of three (3) times the award of compensatory damages or one million dollars ($1,000,000); provided, that if an award of compensatory damages is twenty-five thousand dollars ($25,000) or less, an award of punitive damages shall not exceed seventy-five thousand dollars ($75,000).
HB 1213, § 1.
The language of Article V, § 32 appears on its face to prohibit the above-quoted type of limitation on recovery for injuries to persons or property or injuries resulting in death. A review of the Arkansas Supreme Court's interpretation of that language is necessary, however.
The Arkansas Supreme Court most recently interpreted Article V, § 32 inStapleton v. M.D. Limbaugh Construction Co., 333 Ark. 381, 969 S.W.2d 648
(1998). There, the court applied the provisions of Article V, § 32 strictly, holding that a statutory grant of tort immunity outside the employer-employee relationship violated Article V, § 32.
It is my responsibility to note that just two years before the Limbaugh
decision, in White v. City of Newport, 326 Ark. 667, 933 S.W.2d 800
(1996), the Arkansas Supreme Court did not interpret the language of Article V, § 32 as literally as it did later in Limbaugh. In White, the Arkansas Supreme Court addressed a challenge to a statute that granted tort immunity to municipalities except to the extent of their liability insurance coverage. The challenger argued that the provision violated the prohibition against damage limitations that is set forth in Article V, §32 of the Arkansas Constitution. The court rejected the argument and upheld the statutory grant of immunity to municipalities. The court reasoned that constitutional provisions concerning a citizen's right to redress (such as Article V, § 32) were adopted for the purpose of preventing arbitrary or unreasonable legislative abrogation of such rights. The court further reasoned that the legislature should be permitted to alter common law rights of action when it does so reasonably and for the purpose of recognizing changing times and circumstances, and when the common law stands in the way of good public policy. Accordingly, the court concluded that provisions such as Article V, § 32 should not be interpreted literally so as to prevent such necessary changes. The court stated:
 To read constitutional provisions such as [Article V, § 32] to say that the common law must remain as it stood in 1874 would prevent the legislature from adjusting the law to the changes of time and circumstance. A literal reading of . . . Article 5, § 32, could prevent the use of such concepts as comparative fault, or the abolition of such outdated causes of action as alienation of affection.
White, supra, 326 Ark. at 672.
Instead of a literal interpretation, the court said, the appropriate inquiry in that case was whether the statutory abrogation of the common law cause of action in question was reasonable. The court concluded inWhite that the grant of tort immunity to municipalities was reasonable in that it saved cities from facing bankruptcy and from the necessity of discontinuing valued city services.
A comparison of the approaches taken by the court in White and Limbaugh
raises a perplexing question as to the proper interpretation of Article V, § 32. I find it notable that the Limbaugh court did not mentionWhite, nor did it discuss or apply the "reasonableness" standard enunciated by the White court. My predecessor concluded in Opinion No.2001-058 that White was sui generis, and that its "reasonableness" standard should not be applied in evaluating the damages cap that was at issue in that opinion. I agree with that assessment. It is my opinion that the White decision was concerned primarily with assuring that constitutional provisions such as Article V, § 32 not be interpreted as inhibiting the General Assembly's power to abrogate the common law in appropriate circumstances. Although the court has subsequently citedWhite with approval, it has done so only in support of the proposition that the General Assembly has the power to abrogate the common law, see,e.g., Smith v. State, 345 Ark. 472, 48 S.W.3d 529 (2001); Hartford Ins.Co. v. Mullinax, 336 Ark. 335, 984 S.W.2d 812 (1999), and not in support of an application of the "reasonableness" standard to an interpretation of the language of Article V, § 32. Cf., however, Fritzinger v. Beene, CA 02-197 (Ark.App. 2-5-2003), n. 2 (citing White in support of the broader proposition that the concept of municipal tort immunity did not violate Article V, § 32.)
Although scenarios may arise in which it will be appropriate to applyWhite's "reasonableness" standard, it is my opinion that that standard should not be applied in evaluating the basic question of whether a particular enactment unlawfully limits recovery for injuries. In my view,Limbaugh is the more appropriate precedent to be followed in making such evaluations. As indicated, the Limbaugh court applied a rather strict interpretation of the language of Article V, § 32, holding that limitations on recovery are not permissible outside the employer-employee relationship. When I apply this type of interpretation of Article V, § 32 to HB 1213, I conclude that the punitive damages award limitation raises serious concerns under the plain language of Article V, § 32.
Article IV (Separation of Powers)
It is my opinion that the punitive damages limitation that is created by HB 1213 also raises serious constitutional concerns under the separation of powers provision of the Arkansas Constitution. Article IV states:
1. Departments of government.
 The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confided to a separate body of magistracy, to wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.
2. Separation of departments.
 No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.
Ark. Const., Art. IV.
The Arkansas Supreme Court applies the separation of powers principle strictly. See Spradlin v. Arkansas Ethics Commission, 314 Ark. 108,858 S.W.2d 684 (1993), citing Oates v. Rogers, 201 Ark. 346, 144 S.W.2d 437
(1940). The separation of powers argument regarding damage awards limitations arises out of the judiciary's inherent power of remittitur,i.e., the power of the courts to reduce jury awards. The power of remittitur apparently predates the adoption of Arkansas' current constitution, see Missouri Pac. R.R. Co., Thompson, Trustee, v. Newton,205 Ark. 353, 168 S.W.2d 812 (1943) (remittitur is "a well-established rule almost as old as our system of jurisprudence."); Walker v. Fuller,29 Ark. 448 (1874), and is now codified in the Arkansas Rules of Civil Procedure. See Rule 59, A.R.C.P. For a thorough discussion of this issue, see Op. Att'y Gen. No. 2001-058.
Because Arkansas law recognizes remittitur as an inherent power of the judiciary, and because the Arkansas Supreme Court has applied the separation of powers principle strictly, I conclude that a limitation on punitive damage awards gives rise to serious constitutional concerns under Article IV of the Arkansas Constitution.
Article II, § 7 (Right To Jury Trial)
It is my opinion that although it is not entirely clear how a court would rule on this issue, the punitive awards limitation that is created by HB 1213 does raise serious constitutional questions under Article II, § 7 of the Arkansas Constitution. That provision states in pertinent part: "The right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" The argument that HB 1213 violates this provision presumably would be that the punitive damages award limitation infringes upon the plaintiff's right to have his damages assessed and awarded by the judiciary.
The Arkansas Supreme Court has never ruled definitively on this issue. The weight of authority in other jurisdictions is fairly evenly divided.See Op. Att'y Gen. No. 2001-058. For this reason, I cannot opine definitively as to how such an argument would be received by the Arkansas Supreme Court. In any event, it appears to be clear that the damage limitation provision of HB 1213 at the very least raises serious constitutional questions concerning its validity under Article II, § 7.
Ark. Const., Article II, § 3 and U.S. Const., 14th Amendment (EqualProtection)
It is my opinion that the punitive damages award limitation provision of HB 1213 does not violation the equal protection principles of either the U.S. Constitution or the Arkansas Constitution.
I must note that it is difficult to analyze the applicability of the equal protection doctrine to HB 1213's punitive damages award limitation, because it is not clear from the face of the bill what particular classifications might be argued. Even those that can be hypothesized as possible arguments (such as a classification between plaintiffs who can be fully compensated and those who cannot) include none that would affect a suspect class or a fundamental right. As discussed in response to Question 2, above, if a classification does not affect a suspect class or a fundamental right, the disparity it creates must be shown to have no rational basis — no rational relation to a legitimate end. Vacco v. Quill, 521 U.S. 793 (1997); Romer v. Evans, 517 U.S. 620,631 (1996); Clements v. Fashing, 457 U.S. 957 (1982); Seagrave v. Price,349 Ark. 433, 79 S.W.3d 339 (2002); Craft v. City of Fort Smith,335 Ark. 417, 984 S.W.2d 22 (1998). As also discussed, a classification of this nature will be upheld if any rational basis can be conceived — even a hypothetical one. Eady v. Lansford, 02-695 (Ark. 12-12-2002); Ester v.National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v.Glover, 319 Ark. 16, 889 S.W.2d 729 (1994); Fayetteville Sch. Dist. v. Arkansas State Bd. of Educ., 313 Ark. 1, 852 S.W.2d 122 (1993); Arkansas Hospital Assoc. v. State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73
(1989).
It is my opinion that the drafters of HB 1213 could have reasoned that a classification of plaintiffs seeking punitive damages was justifiable on the policy grounds that it would result in more plaintiffs being able to receive relief by spreading resources among plaintiffs. Because it is possible to adduce a possible rational basis for the only type of classification that could be argued to arise out of the punitive damage award limitation of HB 1213, I must conclude that the provision does not violate the equal protection doctrines of the Arkansas or U.S. Constitutions.
Article II, § 13 (Open Courts/Certain Remedies)
It is my opinion that the punitive damages award limitation provision of HB 1213 does not violate Article II, § 13 of the Arkansas Constitution.
Article II, § 13 states:
 Every person is entitled to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property or character; he ought to obtain justice freely, and without purchase, completely, and without denial, promptly and without delay, conformably to the laws.
Ark. Const., Art. II, § 13.
I must note that it is not entirely clear how the Arkansas Supreme Court would interpret Article II, § 13 in a context involving HB 1213. The court's most recent substantive discussion of Article II, § 13 occurred in White v. City of Newport, 326 Ark. 667, 933 S.W.2d 800 (1996), discussed previously. In that case, the plaintiff, in addition to alleging a violation of Article V, § 32, alleged that the municipal tort immunity statute that was at issue in that case violated Article II § 13. The court applied its "reasonableness" analysis to the Article II, § 13 allegation, as well as to the Article V, § 32 allegation, and concluded that the tort immunity statute was reasonable and did not violate Article II, § 13.
As indicated previously, it is not clear how far the White court's "reasonableness" standard should be extended. However, it is my opinion that the punitive damages award limitation of HB 1213 does not violate Article II, § 13, under either the White court's reasonableness standard, or under the precedent of its pre-White interpretation of Article II, § 13.
In the cases decided prior to White, the court upheld some Article II, § 13 challenges and rejected others. Two threads of consistency seem to run through these cases. First, in order for a challenge based on Article II, § 13 to survive, it must involve an established common law or statutory right of action. See, e.g., Hardin v. City of Devalls Bluff,256 Ark. 480 (1974); Mode v. Barnett, Adm'x, 235 Ark. 641, 361 S.W.2d 525
(1962); Bryant v. Ark. State Highway Comm., 233 Ark. 41, 342 S.W.2d 415
(1961); Lucas v. Bishop, 224 Ark. 353, 273 S.W.2d 397 (1954). Second, in order for an Article II, § 13 challenge to survive, the challenged legislation must entirely preclude any remedy for the plaintiff. See,e.g., Gregory v. Colvin, 235 Ark. 1007, 363 S.W.2d 539 (1963); Embersonv. Buffington, 228 Ark. 120, 306 S.W.2d 327 (1957); Reasor-Hill Corp. v.Harrison, Judge, 220 Ark. 521, 249 S.W.2d 994 (1952). See also Bennett,Att'y General v. N.A.A.C.P., 236 Ark. 750, 370 S.W.2d 79 (1963). Legislation that does not entirely preclude a remedy but that places some restriction on the remedy will be upheld in the face of an Article II, § 13 challenge. See, e.g., Hardin v. City of Devalls Bluff, 256 Ark. 480
(1974); Roesler v. Denton, 239 Ark. 462, 390 S.W.2d 98 (1965); Robersonv. Roberson, 193 Ark. 669, 101 S.W.2d 961 (1937).
Applying these principles, I conclude that regardless of the cause of action relied upon in any given case, HB 1213's limitation of punitive damage awards would survive an Article II, § 13 challenge, because it does not entirely preclude a remedy.
Moreover, it is my opinion that even under the White court's "reasonableness" standard, HB 1213's limitation of punitive damage awards would, for the same reason, survive an Article II, § 13 challenge.[1]
In analyzing an Article II, § 13 challenge under the White court's reasonable standard, a court could well find that because HB 1213's limitation of punitive damage awards does not entirely preclude punitive damages, it is a "reasonable" alteration of any common law basis for recovery. Of course, the White court's "reasonableness" analysis is, to some extent, a factual inquiry that must be undertaken in each case. Nevertheless, I believe that my application of the analysis to HB 1213's limitation of punitive damage awards is plausible as a general matter.
For these reasons, I conclude that HB 1213's limitation of punitive damage awards does not violate Article II, § 13 of the Arkansas Constitution.
Ark. Const., Article II, § 8 and U.S. Const., Amendment 14 (Due Process)
It is my opinion that the punitive damages award limitation does not violate the principle of due process arising out of Article II, § 8 of the Arkansas Constitution and Amendment 14 to the U.S. Constitution.
Although the Arkansas Supreme Court has not addressed this specific issue, the overwhelming weight of authority in other jurisdictions indicates, as discussed thoroughly in Attorney General Opinion No.2001-058, that due process challenges of this nature against damage award limitations are not successful. For this reason, I conclude that such a challenge against the punitive damage award limitation of HB 1213 on due process grounds would not survive.
Question 4 — Are the changes that this bill would bring about in pleadingand evidence requirements superseded by the Arkansas Rules of CivilProcedure and the Arkansas Rules of Evidence?
It is my opinion that the answer to this question will depend largely upon the particular rule with which HB 1213 is alleged to conflict and the purposes and policies underlying that rule. I therefore cannot give a definitive answer to this question. I will, however, set forth the principles that will govern this issue.
As an initial matter, I must point out that under Section 9 of Amendment80 to the Arkansas Constitution, the legislature, by a two-thirds vote, can annul or amend, in whole or in part, any rule that has been promulgated by the Supreme Court under the authority of the following sections of Amendment 80: Section 5 (concerning divisions of the Court of Appeals), Section 6(B) (concerning subject matter divisions of the circuit courts), Section 7(B) (concerning jurisdiction of the district courts), Section 7(D) (concerning subject matter divisions of the district courts), and Section 8 (concerning the duties of referees, masters, and magistrates appointed by circuit and district judges). Ark. Const., Am. 80, § 9. This provision of Amendment 80, permitting annulment or amendment of court rules by a two-thirds vote of the legislature, appears to apply only in situations in which the legislature annuls or amends an already-existing court rule.
Outside the context of an annulment or amendment pursuant to Amendment 80, § 9, the matter of conflicts between court rules and the pleading and evidence requirements of HB 1213 will be governed by the following principle: To the extent that any of the provisions of HB 1213 concerning pleading and evidence conflicts with the Arkansas Rules of Civil Procedure or the Arkansas Rules of Evidence, the provisions of the bill will take precedence unless applying them would compromise the primary purpose of the rule with which they conflict. If the primary purpose of the court rules would be compromised, the rules will take precedence. However, if, in the case of such a conflict, the application of the provisions of the bill in a particular case is necessary to preserve a well-established public policy that has its basis other than in court administration, the provisions of the bill will take precedence.
The Arkansas Supreme Court recently addressed the issue of conflicts between court rules and legislative enactments. In Price v. Price,341 Ark. 311, 16 S.W.3d 248 (2000), a conflict arose between Rule 58 of the Arkansas Rules of Civil Procedure and A.C.A. § 16-25-121, concerning the effective date of a divorce decree. The lower court had announced from the bench that a wife was awarded a divorce, but before the decree was actually entered, the husband was killed. Under Rule 58, the decree would have been final when entered by the court clerk. Under the statute, in contrast, the decree would have been final at the time it was rendered. A dispute therefore arose as to whether the divorce was final at the time of the husband's death, and whether the wife was entitled, in the probate proceeding, to the rights of a surviving spouse. The court held that Rule 58 took precedence.
In determining that the rule should control, the court relied on the following policy as stated in State v. Sypult, 304 Ark. 5, 800 S.W.2d 402
(1990), in which a similar conflict had arisen between a court rule and a statute:
 "To protect what we hold inviolate we now declare that we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme."
Price, 341 Ark. at 315, quoting Sypult, 304 Ark. at 7.
The Price court noted that an exception to the policy stated in Sypult
exists when the statutory rule is based upon a fixed public policy that has been legislatively or constitutionally adopted and has as its basis something other than court administration. For example, in Citizens for aSafer Carroll County v. Epley, 338 Ark. 61, 991 S.W.2d 562 (1999), a conflict arose between a statute that required a shorter appeal time than the applicable rule. The court there held that the statute should control, because it was based on the strong public policy that local option election matters should be advanced.
The above-described principles, as discussed and applied by the Arkansas Supreme Court in Price, Sypult, and Epley, will govern the issue you have raised with regard to the pleading and evidence requirements of HB 1213. The outcome of any application of these principles in a matter involving the requirements of HB1213 will depend upon the particular rule with which the provisions of the bill conflict, and the purposes and policies underlying that rule.
Question 5 — Does the statute of limitations provision of the billviolate Article V, § 32 of the Arkansas Constitution (prohibitinglimitation on recovery in certain contexts); Article II, § 3 of theArkansas Constitution or the 14th Amendment to the U.S. Constitution(equal protection); Article II, § 8 of the Arkansas Constitution or the14th Amendment to the U.S. Constitution (due process); or Article II,§ 13 of the Arkansas Constitution (open courts/certain remedies) byeliminating a course of conduct that culminated in or added to aninjury?
Article V, § 32 (Limitations on Recovery)
Although the Arkansas Supreme Court has never addressed the question of whether a statute of limitations violates Article V, § 32, it is my opinion that if the court were faced with the issue, it would interpret the language of Article V, § 32 narrowly and as not prohibiting statutes of limitations.
Again, the pertinent portion of Article V, § 32 states:
 Provided, that otherwise no law shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to persons or property; and in case of death from such injuries the right of action shall survive, and the General Assembly shall prescribe for whose benefit such action shall be prosecuted. [As amended by Const. Amend. 26.]
Ark. Const., Art. V, § 32 (emphasis added).
When the court has been called upon to interpret the meaning of the specific terms used in Article V, § 32, it has given that language a narrow reading. For example, in Southwestern Bell Tel. Co. v. Wilkes,269 Ark. 399, 601 S.W.2d 855 (1980), the court interpreted the term "injury," as used in Article V, § 32 narrowly to mean "physical" injury rather than economic injury.
The statute of limitations provision of HB 1213 states in pertinent part:
 No action for injury shall encompass alleged wrongful acts occurring more than two (2) years prior to the commencement of the action for injury based upon an allegation of a continuing course of conduct or otherwise.
I believe that if the court had an opportunity to analyze the above-quoted provision under Article V, § 32, it would take the same approach that it took in Southwestern Bell, supra. That is, I believe that the court would interpret the language of Article V, § 32 narrowly, reading the constitutional provision to prohibit limitations on "the amount" of recovery only, and not limitations on the time of recovery. Under such an analysis, the statute of limitations would not violate Article V, § 32.
Because I believe that the court would take such an approach to analyzing HB 1213's statute of limitations, I conclude that the provision does not violate Article V, § 32.
Ark. Const., Article II, § 3 and U.S. Const., 14th Amendment (EqualProtection); Ark. Const., Article II, § 8 and U.S. Const., Amendment 14(Due Process)
It is my opinion that the statute of limitations created by HB 1213 does not violate the constitutional principles of equal protection or due process.
As discussed above, in order for a statutory provision that creates classifications to survive an equal protection challenge, the classification (if it does not affect a suspect class or a fundamental right) must not be arbitrary; it must have a rational basis. Vacco v.Quill, 521 U.S. 793 (1997). Similarly, in order for such a statutory provision to survive a due process challenge, it must be rationally related to a legitimate governmental interest. Winters v. State,301 Ark. 127, 782 S.W.2d 566 (1990). As also indicated previously, the rational basis for legislation need not be proved; rather, if a rational basis can be conceived, the legislation will survive an equal protection or due process challenge. Id.; Eady, supra.
In Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001), the Arkansas Supreme Court addressed a challenge, on both equal protection and due process grounds, to a two-year statute of limitations. The plaintiff had filed a lawsuit under the Medical Malpractice Act for an injury arising out of procedure performed when he was a minor. He filed the lawsuit more than two years after the procedure had been performed. He argued that his suit should not be barred by the two-year statute of limitations set forth in the Act, but rather should be governed by a statute (A.C.A. §16-56-116, which is general statute extending the statute of limitations for the claims of minors. The plaintiff argued that it would violate the principles of equal protection and due process to treat minors with malpractice claims differently than minors with other types of tort claims. The court rejected the argument on the grounds that there was a rational basis (minimizing health-care costs) for imposing a shorter statute of limitations on minors with malpractice claims.
It is my opinion that if the Arkansas Supreme Court were faced with evaluating the statute of limitations of HB1213, it would find, as it did in Raley, that there is a similarly conceivable rational basis for the provision and that it therefore does not violate the principles of equal protection and due process.
Article II, § 13 (Open Courts/Certain Remedies)
It is my opinion that the statute of limitations provision of HB 1213 does not violate Article II, § 13 (the open courts and certain remedies provision) of the Arkansas Constitution. I base this conclusion on the principles previously discussed on Pages 11 — 13 of this opinion concerning Article II, § 13. More specifically, a statute of limitations does not entirely preclude a remedy, and is, in my opinion, reasonable under the White court's "reasonableness" standard (if that standard is applied).[2]
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] It must be remembered that an Article II, § 13 challenge raises different issues than an Article V, § 32 challenge. I have opined that an Article V, § 32 challenge to HB 1213's limitation of punitive damages, unlike an Article II, § 13 challenge to the same provision, would be successful. It should also be noted that there is post-White precedent to indicate that the White court's "reasonableness" standard should not be applied to an Article V, § 32 challenge. In contrast, it is not as clear whether the "reasonableness" standard should be applied to an Article II, § 32 challenge, because White is the most recent substantive discussion of Article II, § 13.
[2] You have not inquired about the portion of HB1213 that restricts the venue of actions for nursing home injuries to the circuit court of the county in which the injury occurred. However, because your request, in addition to setting forth specific questions, also seeks my exploration of any constitutional issues relevant to HB1213, I will mention one issue that could have constitutional significance. To the extent that the venue restriction in HB 1213 impliedly amends or repeals A.C.A. § 16-60-112(a), it will be subject to a two-thirds vote requirement in the General Assembly. The provisions of A.C.A. §16-60-112(a) are the codification of Act 314 of 1939. Act 314 established venue for injury or death in the county where the "accident" occurred or in the county where the person injured or killed resided at the time of the injury. Act 314, commonly known as the "Venue Act," was referred to a vote of the people at the general election of 1940 and adopted. See
www.sosweb.state.ar.us, "Elections," "Initiatives and Referenda" "Historyof Initiatives and Referenda 1938-2000; Fort Smith Couch and Bedding Co.v. Rozell, 203 Ark. 35, 155 S.W.2d 707 (1941); Terminal Oil Co. v.Guatney, Judge, 202 Ark. 748, 152 S.W.2d 309 (1941). "No measure approved by a vote of the people shall be amended or repealed by a vote of the General Assembly . . . except upon . . . two-thirds vote of the all members elected to each house. . . ." Amendment 7, "General Provisions." I do not take a position on the issue of whether HB 1213's venue provision amends or repeals A.C.A. § 16-60-112(a). In this regard, I note that in nursing home injury cases, the place of the "accident" and the injured person's residence may be deemed to be one and the same. SeeGoodwin v. Harrison, 300 Ark. 474, 780 S.W.2d 518 (1989) (distinguishing residence and domicile for purposes of venue statute); Norton v.Purkins, 203 Ark. 586, 157 S.W.2d 765 (1942) ("residence" for purposes of venue statute does not necessarily mean one's permanent abode or legal domicile). I have noted the issue in an abundance of caution, however, and in the event that any circumstance exists where HB1213 would alter A.C.A. § 16-60-112(a).